WILLIAM HENRY MITCHELL BY AND THROUGH HIS GUARDIAN AD LITEM, ESTHER FERGUSON MITCHELL v. FRED OVID FREULER, AD-MINISTRATOR; CAROLYN F. TOWNSEND AND HUSBAND CLYDE RICHARD TOWNSEND; KATIE F. BARNES AND HUSBAND, RICHARD L. BARNES; AND THE STATE OF NORTH CAROLINA

No. 84

(Filed 17 May 1979)

Descent and Distribution § 8; Constitutional Law § 23.7 — illegitimate child — stat-utes governing intestate succession upon father's death — constitutionality

The N.C. statute governing the right of an illegitimate child to inherit from, by, and through his father, G.S. 29-19 and the statutes in *pari materia*, do not violate the Equal Protection and Due Process Clauses of the U.S. Con-stitution, since those statutes are substantially related to the lawful State in-terests they are intended to promote, those interests being: (1) to mitigate the hardships created by former N.C. law which permitted illegitimates to inherit only from the mother and from each other; (2) to equalize insofar as practical the inheritance rights of legitimate and illegitimate children; and (3) at the same time to safeguard the just and orderly disposition of a decedent's proper-ty and the dependability of titles passing under intestate laws.

Justices BRITT and BROCK did not participate in the consideration or deci-sion of this case.

ON plaintiff's petition under G.S. 7A-31(a) for discretionary review of the judgment entered by *Browning, S.J.,* at the 13 February 1978 special civil session of HALIFAX, docketed and argued as Case No. 100 at the Fall Term 1978.

Mitchell v. Freuler

On 5 July 1977, by and through his duly appointed guardian ad litem, plaintiff brought this action for a declaratory judgment adjudicating his right to one third of the estate of William Henry Freuler, who died intestate on 25 December 1976. Plaintiff claims to be the illegitimate son of Freuler. The defendants are Freuler's two daughters, their husbands, and Freuler's administrator, who was appointed on 6 January 1977. In his complaint plaintiff alleges:

On 29 March 1962 plaintiff was born to Evelyn Mitchell and William Freuler. Evelyn Mitchell and Freuler were never married; nor did Freuler either legitimate or adopt plaintiff. During the last seven years of his life, however, Freuler lived with Miss Mitchell and plaintiff. He "acknowledged" plaintiff to be his son, purchased insurance policies for him, maintained savings accounts for him, and had plaintiff work with him at his automobile parts shop. Although he had expressed his intention to provide for plaintiff after his death, he died suddenly without having executed a will.

Plaintiff further avers that, under the statutory law of North Carolina — G.S. 29-19 (1976) and the statutes referred to therein — he is not entitled to share in Freuler's estate. He asserts, however, that the United States Supreme Court, in *Trimble v. Gordon*, 430 U.S. 762, 52 L.Ed. 2d 31, 97 S.Ct. 1459 (1977), has invalidated G.S. 29-19 as "an invidious discrimination on the basis of illegitimacy . . . and is, in violation of the Fourteenth Amendment to the Constitution of the United States."

Plaintiff's prayer for relief is that the Court (1) set aside the State's intestate succession statutes insofar as they operate to prevent plaintiff from sharing Freuler's estate equally with his two daughters, and (2) order Freuler's administrator to distribute his net estate in equal shares to the two daughters and plaintiff.

In answering the complaint, inter alia, defendants deny that plaintiff is Freuler's child and assert that the decision of the United States Supreme Court in *Trimble v. Gordon* has no application to the North Carolina statutes with reference to the right of an illegitimate child to inherit from his father. However, in the event the Court should hold G.S. 29-19 invalid, defendants request a jury trial on the issue whether plaintiff is the son of Freuler.

On 17 January 1978, pursuant to G.S. 1A-1, Rule 12(b), defendants moved to dismiss the complaint because it shows that plaintiff is an illegitimate child who does not meet the requirements of G.S. 29-19. Judge Browning granted defendants' motion and dismissed the case. Plaintiff appealed to the Court of Appeals and, upon his petition to bypass that court, we allowed discretionary review under G.S. 7A-31(a).

*Rufus L. Edmisten, Attorney General, and Charles J. Murray, Assistant Attorney General, for the State.*

*Allsbrook, Benton, Knott, Cranford & Whitaker by Thomas L. Benton for plaintiff.*

*Wendell C. Moseley for Fred Ovid Freuler, Administrator, Carolyn F. Townsend, and Katie F. Barnes, defendants.*

SHARP, Chief Justice.

The sole issue in this case is whether the North Carolina Statutes governing the right of an illegitimate child to inherit from, by, and through his father[1] violate the equal protection clause of the United States Constitution. The applicable statutes in effect at the time of Freuler's death are quoted or summarized below.

1. G.S. 29-19(b) and (d) (1976) provide:

"(b) For the purpose of *intestate succession*, an illegitimate child shall be entitled to take by, through and from:

(1) Any person who has been judicially determined to be the father of such child pursuant to the provisions of G.S. 49-14 through 49-16.[2] [G.S. 49-14 through G.S. 49-16

---

1. Under the Intestate Succession Act an illegitimate child is treated in every respect as if he were the legitimate child of his mother. G.S. 29-19(a) (1976).

2. Effective September 1, 1977, G.S. 29-19(b)(1) was rewritten by N.C. Sess. Laws, ch. 757, §§ 3, 4, (1977) to read as follows: "Any person who has been finally adjudged to be the father of such child pursuant to the provisions of G.S. 49-1 through 49-9 or the provisions of G.S. 49-14 through 49-16."

G.S. 49-1 through 49-9, inter alia, makes a parent's wilful failure to support his or her illegitimate child a misdemeanor and authorizes the prosecution of the putative father within (1) three years next after the birth of the child; or (2) where the paternity of the child has been judicially determined within three years next after its birth, at any time before he attains the age of 18 years; or (3) where the reputed father has acknowledged the paternity of the child by payments for the support thereof within three years next after the birth of such child, three years from the date of the last payment whether such last payment was made within three years of the birth of such child or thereafter. The court before which the prosecution comes is first required to determine whether the defendant is a parent of the child on whose behalf the proceeding is instituted. If this issue is determined in the affirmative the court then determines whether the defendant is guilty of nonsupport and, if so, enters an appropriate judgment.

authorize the establishment of paternity by proof beyond a reasonable doubt in a civil action commenced during the lifetime of the putative father and within three years next after the birth of the child or within three years next after the date of the last payment by the putative father for the support of the child.]

(2) Any person who has acknowledged himself during his own lifetime to be the father of such child in a written instrument executed or acknowledged before a certifying officer named in G.S. 52-6(c) and filed during his own lifetime in the office of the clerk of superior court of the county where either he or the child resides.[3]

Notwithstanding the above provisions, no person shall be entitled to take hereunder unless he has given written notice of the basis of his claim to the personal representative of the putative father within six months after the date of the first publication or posting of the general notice to creditors."

"(d) Any person who acknowledges himself to be the father of an illegitimate child in his duly probated last will shall be deemed to have intended that such child be treated as expressly provided for in said *will* or, in the absence of any express provisions, the same as a legitimate child."

2. G.S. 49-10 (1976) permits the putative father of an illegitimate child to file a special proceeding in the superior court of the county of his residence, or that of the child "praying that such child be declared legitimate." The mother (if living) and the child are necessary parties to this proceeding. If the court finds that the petitioner is the father of the child it will enter an order declaring the child legitimate and the clerk shall record the decree. G.S. 49-11 (1976) specifies that the effect of such legitimation is (1) to impose upon the father and mother all the lawful rights, privileges, and obligations of parenthood; and (2), in case of

---

3. G.S. 29-19(b)(2) was amended by 1977 N.C. Sess. Laws, ch. 375 §§ 6 and 17, and ch. 591, § 1 so that it now reads as follows:

"(2) Any person who has acknowledged himself during his own lifetime and the child's lifetime to be the father of such child in a written instrument executed or acknowledged before a certifying officer named in G.S. 52-10(b) and filed during his lifetime and the child's lifetime in the office of the clerk of superior court of the county where either he or the child resides."

The substitution of G.S. 52-10(b) for G.S. 52-6(c) merely added notaries public to the list of certifying officers authorized to take acknowledgments.

death and intestacy, to make the child an heir of his father and mother as if he had been born in wedlock and, similarly, to make them heirs of the child also entitled to share in his estate as provided in the Intestate Succession Act.

3. G.S. 49-12 (1976) provides that when the mother of any child born out of wedlock and the reputed father of such child shall intermarry after the birth of the child, from this date the child shall be deemed legitimate and "entitled, by succession, inheritance or distribution, to real and personal property, by, through, and from his father and mother as if he had been born in lawful wedlock." Similarly, the child's property shall descend and be distributed according to the Intestate Succession Act.

Plaintiff bases his claim as an heir of Freuler entirely upon the case of *Trimble v. Gordon*, 430 U.S. 762, 52 L.Ed. 2d 31, 97 S.Ct. 1459, decided 26 April 1977 (hereinafter referred to as *Trimble*). Plaintiff's reliance upon this case is without foundation. In the first place, the Illinois statute which the Court held unconstitutional in *Trimble* differs significantly and determinatively from the North Carolina Statute we consider here. Second, on 11 December 1978 the United States Supreme Court decided *Lalli v. Lalli*, ---- U.S. ----, 58 L.Ed. 2d 503, 99 S.Ct. 518 (1978), which clearly distinguishes the statute which *Trimble* declared unconstitutional from the statutes which we consider in this case.

At issue in *Trimble* was the constitutionality of an Illinois statute (§ 12) which provided that a child born out of wedlock could inherit from his intestate father *only* if the father had acknowledged the child as his child *and* had married the child's mother. The appellant in *Trimble*, Deta Mona Trimble, was a child born out of wedlock. Her father, Sherman Gordon, had openly acknowledged her as his child, but he never married her mother. He had, however, been found to be her father in a judicial decree ordering him to contribute to her support. When Sherman Gordon died intestate, Deta Mona was excluded as a distributee of his estate because she had not met the statutory requirements for inheritance. The Supreme Court held in a five-to-four decision that the Illinois statute discriminated against illegitimate children in a manner prohibited by the Equal Protection Clause in that the statute was not substantially related to permissible state interests.

Mitchell v. Freuler

The Illinois statute, the Supreme Court said, could not be justified on the grounds it would encourage legitimate family relationships or foster the maintenance of an accurate and efficient method of disposing of an intestate decedent's property.[4] The Court recognized that "[t]he more serious problems of proving paternity might justify a more demanding standard for illegitimate children claiming under their fathers' estates than that required either for illegitimate children claiming under their mothers' estates or for legitimate children generally." Notwithstanding, it held that the Illinois statute was "constitutionally flawed" because, by requiring not only that the father acknowledge the child as his but that he also marry the mother, the legislature had excluded at least some significant categories of illegitimate children whose inheritance right could be recognized without jeopardizing the orderly settlement of estates or the dependability of titles passing under intestacy laws.[5]

The Illinois statute, the Court declared, was not "carefully tuned to alternative considerations. . . . Difficulties of proving paternity in some situations do not justify the total statutory disinheritance of illegitimate children whose fathers die intestate. The facts of this case graphically illustrate the constitutional defect of § 12. Sherman Gordon was found to be the father of Deta Mona in a state-court paternity action prior to his death. On the strength of that finding, he was ordered to contribute to the support of his child. That adjudication should be equally sufficient to establish Deta Mona's right to claim a child's share of Gordon's estate, for the State's interest in the accurate and efficient disposition of property at death would not be compromised in any way by allowing her claim in these circumstances."[6]

At the time *Trimble* was decided the plaintiff's appeal in *Lalli v. Lalli*, 38 N.Y. 2d 77, 378 N.Y.S. 2d 351, 340 N.E. 2d 721 (1975) was pending in the United States Supreme Court. In brief summary the facts in *Lalli* are as follows:

The plaintiff, Robert Lalli, alleged that he and his sister, Maureen, are the illegitimate children of Mario Lalli, who died in-

4. *Lalli v. Lalli,* --- U.S. ---, 58 L.Ed. 2d 503, 509, 99 S.Ct. 518 (1978).

5. Trimble at 770-72, 52 L.Ed. 2d 39-40, 97 S.Ct. 1465-66.

6. Trimble at 772, 52 L.Ed. 2d 40-41, 97 S.Ct. 1466.

testate on 7 January 1973 in New York. At that time they were 25 and 23 years old respectively. It was not contested that during his lifetime Mario had provided financial support for both Robert and Maureen, and that he had openly and often acknowledged them as his children. It was agreed, however, that there was never any order of filiation, and that the mother of Robert and Maureen, who died 11 October 1968, was never married to Mario.

After Mario's widow (who had lived with him as his wife for the 34 years preceding his death) was appointed administratrix of his estate plaintiff petitioned the Surrogate's Court for a compulsory accounting. He asserted that he and Maureen were entitled to inherit from Mario as his children. The administratrix contested the claim on the ground that, even if Robert and Maureen were Mario's children, they were not entitled as distributees because they failed to meet the requirements of § 4-1.2 of the New York Estate, Powers and Trusts Law. In pertinent part § 4-1.2 provided:

"An illegitimate child is the child of his father so that he and his issue inherit from his father if a court of competent jurisdiction has, during the lifetime of the father, made an order of filiation declaring paternity in a proceeding instituted during the pregnancy of the mother or within two years from the birth of the child."

The plaintiff contended that § 4-1.2 was invalid because it denied him and his sister the equal protection of the law guaranteed by the State and Federal constitutions and the due process of law as provided by the Federal Constitution. The Surrogate granted the administratrix' motion to dismiss, and the plaintiff appealed directly to the Court of Appeals. In sustaining the statute against this attack, and affirming the decree of the Surrogate's Court, the Court of Appeals reasoned:

Section 4-1.2 does not discriminate against illegitimacy; the difference in treatment exists only with respect to the means by which the fact of fatherhood is to be established. Once fatherhood is established in the manner required by the statute, the right of the illegitimate child to inherit is the same as if he had been born in wedlock. Since the identification of a natural mother is both easier and far more conclusive than the identification of a natural father, the legislature acted reasonably in requiring the formality

and conclusiveness of a court order adjudicating the fact of paternity. This procedure minimizes the risk of misrepresentation, fraud, duress, and other circumstances which might vitiate written acknowledgments of paternity, financial support, *et cetera*. *Lalli v. Lalli*, 38 N.Y. 2d 77, 81-82, 378 N.Y.S. 2d 351, 354-55, 340 N.E. 2d 721, 724 (1975).

Finally, the court deemed it not unreasonable "to lay down as a condition precedent that the order of filiation must be during the lifetime of the natural father. . . . His availability should be a substantial factor contributing to the reliability of the fact-finding process." Further, when a father dies intestate the statutes governing descents and distributions are presumed to express his wishes regarding the distribution of his property. Since by will he can disinherit a legitimate child and provide for an illegitimate one, "it is not unreasonable to require, in addition to a highly reliable standard of proof of parenthood, that the alleged father have personal opportunity to participate, if he chooses, in the procedure by which the fact of fatherhood is established." *Id.*

On 16 May 1977 (20 days after *Trimble* was decided) the Supreme Court vacated the judgment in *Lalli v. Lalli, supra*, and remanded the case to the Court of Appeals of New York "for further consideration in the light of *Trimble v. Gordon*, . . . ."

Upon remand and reconsideration the Court of Appeals found the Illinois statute which was before the Court in *Trimble* to be "significantly and determinatively different" from the New York Statute and it adhered to its previous decision. *In re Lalli*, 43 N.Y. 2d 65, 400 N.Y.S. 2d 761, 371 N.E. 2d 481 (1977). The Court of Appeals reiterated and emphasized that under the Illinois law the right of an illegitimate child to inherit from the father depended not only on proof of paternity by way of the father's acknowledgment but also on proof that the parents had intermarried. By contrast, under the New York statute the right to inherit depends only on proof that a court of competent jurisdiction has made an order of filiation declaring paternity during the lifetime of the father. In requiring that the family relationship be "legitimatized" by the subsequent marriage of the parents, the Court of Appeals said the Illinois Legislature had manifested an impermissible hostility to illegitimacy, even when there was no doubt as to paternity. Thus, Illinois was penalizing children born out of

wedlock for the sins of their parents. Conversely, New York concerned itself only with "the fact of paternity" and "with the form and manner of its proof, *i.e.*, a court order of filiation."

The determinative question, the Court of Appeals decided, was "whether a State may constitutionally require as proof of paternity a judicial determination made during the lifetime of the father." It found nothing in *Trimble* which prohibited this requirement, held that the State could constitutionally require a judicial decree during the father's lifetime as the exclusive form of proof of paternity, and reaffirmed the decree of the Surrogate's Court. Robert Lalli again sought, and obtained, review by the Supreme Court.

Upon Lalli's second appeal, Justice Powell (who also wrote the majority opinion in *Trimble*) distinguished the Illinois and New York statutes substantially as the Court of Appeals had done. He then stated the question to be "whether the discrete procedural demands that § 4-1.2 placed on illegitimate children bear an evident and substantial relation to the particular state interest this statute is designed to serve." The inquiry under the Equal Protection Clause, he said, "does not focus on the abstract 'fairness' of a state law, but on whether the statute's relation to the state interests it is intended to promote is so tenuous that it lacks the rationality contemplated by the Fourteenth Amendment." This time the Court concluded that the relationship was not so tenuous and affirmed the New York Court of Appeals in a five-to-four decision. *Lalli v. Lalli*, ---- U.S. ----, 58 L.Ed. 2d 503, 99 S.Ct. 518 (1978). The rationale of the majority opinion is summarized as follows:

The purpose of § 4-1.2 is the just and orderly disposition of property at death—a matter in which the State has a substantial interest. Paternal inheritance by illegitimates involves peculiar problems of proof which may make it difficult to expose false claims of paternity. Ordinarily such problems do not exist in establishing maternity. Quoting from the report of the Bennett Commission,[7] Justice Powell suggested that without § 4-1.2 unknown illegitimates would create an almost insuperable burden.

---

7. This Commission was created by the New York Legislature in 1961 to recommend, inter alia, needed changes in the law pertaining to the descent and distribution of property and the practice and procedure relating thereto. *Lalli v. Lalli*, --- U.S. ---, n. 7, 58 L.Ed. 2d 512, n. 7, 99 S.Ct. 525, n. 7.

Mitchell v. Freuler

"How achieve finality of decree in any estate when there always exists the possibility, however remote, of a secret illegitimate lurking in the buried past of a parent or an ancestor of a class of beneficiaries?" The "strictures" of § 4-1.2, he noted, not only mitigate serious difficulties in the administration of the estates of both testate and intestate decedents but also protect innocent decedents "and those rightfully interested in their estates from fraudulent claims of heirship and harassing litigation instituted by those seeking to establish themselves as illegitimate heirs."

Finally, Mr. Justice Powell concluded that the history of § 4-1.2 disclosed that the legislature had attempted to "grant to illegitimates *in so far as practicable* rights of inheritance on a par with those enjoyed by legitimate children," and that the section "represents a carefully considered legislative judgment as to how this balance best could be achieved."

We now compare N.C. Gen. Stat. §§ 29-19, 49-10 through -12, 49-14 through -16 (1976) with both New York's § 4-1.2 and Illinois' § 12, and consider the impact of the *Trimble* and *Lalli* decisions upon plaintiff's contention that the North Carolina statutes dealing with the intestate succession rights of illegitimates contravene the Equal Protection Clause. As noted earlier, at all times pertinent to this case North Carolina law[8] allowed an illegitimate child to inherit by, through and from his putative father upon proof of paternity by any one of the following methods: (1) a judicial decree entered during the life of the putative father; (2) the father's written admission of paternity, duly acknowledged and recorded in his lifetime in the appropriate office of the clerk of the superior court; (3) the father's acknowledgment of paternity in his duly probated will; and (4) the intermarriage of the mother and putative father at any time after the birth of the illegitimate child.

As previously pointed out, the vice in the Illinois statute was that it denied to the illegitimate child the right to inherit from his father *unless* he had married the child's mother, albeit the child's paternity was not in doubt. North Carolina statutes manifest no

---

8. On 1 September 1977 the legislature added another method of proving paternity. G.S. 29-19(b)(1) was amended to allow an illegitimate child to inherit from the putative father whose paternity had been established in a criminal prosecution under G.S. 49-1 through -9 for failure to support the child. Had this statute been in effect at the time of Freuler's death it would not have affected this case because Freuler was neither charged with nor convicted for the nonsupport of plaintiff.

such hostility to illegitimates. While the intermarriage of the mother and father will legitimate the child, our statutes also provide several alternate methods by which paternity can be established. The decision in *Trimble*, therefore, does not control the decision in this case.

By specifying the manner and time in which an illegitimate may establish his paternity, this State—like New York—has sought (1) to mitigate the hardships created by our former law (which permitted illegitimates to inherit only from the mother and from each other); (2) to equalize insofar as practical the inheritance rights of legitimate and illegitimate children; and, (3) at the same time to safeguard the just and orderly disposition of a decedent's property and the dependability of titles passing under intestate laws. The exposition of Mr. Justice Powell in his opinion upholding the constitutionality of § 4-1.2 in *Lalli*, and that of the New York Court of Appeals in its opinion in the same case, are equally applicable to plaintiff's attack upon G.S. 29-19 and the alternative statutes comprising this State's scheme for proving paternity.

Upon the authority of *Lalli v. Lalli*, we hold that G.S. 29-19 and the statutes in *pari materia* are substantially related to the lawful State interests they are intended to promote. We therefore find no violation of the Equal Protection and Due Process Clauses.

The judgment of the Superior Court of Halifax County is

Affirmed.

Justices BRITT and BROCK did not participate in this decision.