IN THE MATTER OF THE PETITION OF ELIZABETH MARIE
HAUPTLY TO CHANGE HER NAME TO ELIZABETH MARIE HOWARD.

[No. 674S124.  Filed June 25, 1974.]

*Robert J. Shula, Sherwood P. Hill,* Indiana Civil Liberties
Union, Indianapolis, *Denis J. Hauptly,* of Portland, Or., *John
Moore,* of Annapolis, Md., for appellant.

*Theodore L. Sendak,* Attorney General, *Robert F. Colker,*
Assistant Attorney General, for State of Indiana.

GIVAN, J.—We have before us a petition to transfer from an opinion rendered by the Court of Appeals, which opinion is reported in 294 N.E.2d 833.

This is an appeal by the petitioner below from a denial of her petition for a name change as provided under IC 34-4-6-1, Burns Ind. Ann. Stat., 1972 Supp., § 3-801 *et seq.*

Appellant is married to Denis J. Hauptly. Her maiden name was Elizabeth Marie Howard. She filed her petition to change her name from her married name to her maiden name.

A hearing was had on the petition which revealed that her husband concurred in the request for change of name.

Mrs. Hauptly testified at the hearing that, among other things, she was unhappy with the name of Hauptly in that she felt it hid her true identity and heritage. She appeared to be quite proud of her maiden name and the ethnic background which it represented. She testified that she was not seeking the name change in order to perpetrate fraud on anyone or to hide her identity from any creditors or to escape identification for any criminal action.

After hearing the evidence, the trial court rendered finding and judgment as follows:

> "The Court finds the Petitioner abandoned her maiden name when the Petitioner and her husband were married. The Court further feels that her sense of dignity and existence as an individual are not impaired; that the use of her husband's name is not an affront to her dignity and sense of individuality; that neither her ambitions or identity are curtailed by her using her married name. It is, therefore, the Order and Judgment of this Court that the Petition of Elizabeth Marie Hauptly be and is hereby denied. Judgment."

The Indiana statute permitting change of name is quite simple and reads as follows:

> "The circuit courts in the several counties of this state may change the names of natural persons on application by petition." IC 34-4-6-1, Burns Ind. Ann. Stat., 1972 Supp., § 3-801.

There is no statutory requirement in Indiana that the petitioner establish any particular reason other than his personal desire for change of name. There is, of course, the common law restriction that a name change should not be permitted in order to defraud others or to hide criminal activity. See 57 Am. Jur. 2d *Name,* § 22.

The appellant has not only attacked the judgment of the trial court in this matter, but has also seen fit to attack the statute providing for a change of name in that she states the statute violates the concept of equal protection by denying a change of name to a married woman.

Appellant misconceives the language of the statute. It by no stretch of the imagination purports to distinguish between the sexes or married or unmarried perons.

The appellant also in one part of her brief states that she was forced to practice her profession as a nurse under her husband's name of Hauptly, much to her embarrassment. In another portion of her brief she observes quite correctly that a woman has a common law right to do business in a name other than her married name, citing the case of *Emery* v. *Kipp* (1908), 154 Cal. 83, 97 P. 17. In fact, there is no legal requirement that any person go through the courts to establish a legal change of name. The statute merely provides for an orderly record of the change of name in order to avoid future confusion. In the absence of a statute, a person may ordinarily change his name at will without any legal proceedings. The person need only adopt another name. This may be done so long as the change of name is not done for a fraudulent purpose. 57 Am. Jur. 2d, *Name,* § 10. This is the state of the law in Indiana today. Indiana has no statute that would prevent the taking of an assumed name without judicial order. This would appear to be a matter which should be obvious to any person of reasonable intelligence within our society. It is common knowledge that persons in entertainment and like occupations quite often present themselves to the public under an assumed or stage

name, which name they retain regardless of their marital status at subsequent times. This is a practice which has been long accepted and readily understood by the public including the bench and bar. However, at any time one of these persons, or in fact any member of our society who wishes to make a public legal record of a name change, may take advantage of the Indiana statute. The only duty of the trial court upon the filing of such a petition is to determine that there is no fraudulent intent involved. Once having so found, we hold that it is an abuse of judicial discretion to deny any application for a change of name under the statute.

The State in its brief makes a personal attack on the appellant because she is a married woman, claiming that her reaction to her maiden name is an insult to her husband and at one point characterizes her as "a kind of oddball." It is true that under the common law and by tradition in this country a married woman assumes the surname of her husband. 57 Am. Jur. 2d, *Name*, § 9. However, we find nothing in the law that states that in so doing a married woman in any sense gives up her right as a person to change her name as anyone else might change his.

The State also argues that since the appellant is the mother of a child that her decision to change her name might cause embarrassment to her child. We cannot see how as a matter of law this can have any bearing on the case. There is certainly no direct or positive evidence in this regard, and the mere speculation by the State that such would occur is not sufficient to justify the trial court's denial of appellant's petition. The mere fact that appellant chooses to deviate from the common law requirement that she use the name of her husband does not justify the State's terming her "an oddball" nor do we see any public purpose to be served by denying her the right to such a deviation from the norm. The record in this case clearly reveals there is no vicious or ulterior motive on the part of the appellant. It simply discloses she prefers her father's surname to that of

her husband. She readily conceded in her testimony that should she bear a daughter in the future she would expect her daughter possibly to take the same position concerning a desire to retain the Hauptly name when she married for many of the same reasons the appellant now seeks to regain her maiden name of Howard.

For the foregoing reasons, the petition to transfer is granted.

The trial court is reversed.

Arterburn, C.J., and DeBruler, J., concur; Hunter, J., concurs with opinion; Prentice, J., dissents with opinion.

### Concurring Opinion

Hunter, J.—I concur completely in the holding of the majority opinion. However, I am unable to agree with the singular judicial restraint exhibited by my Brother Givan in reaction to the baseless allegations contained within the State's brief:

> "Instead of facing and answering the several issues and well-reasoned arguments of appellant, the State, through its Attorney General, has instead, viciously and without basis, attacked the personality and character of the appellant by referring to her as a sick and greedy person. This method of response is certainly much easier than researching the law and forming a logical argument in rebuttal, if the same is available." (Appellant's Reply Brief, p. 2.)

At various points throughout the State's argument, the following *groundless* charges appear in a sort of character assassination of Mrs. Hauptly:

> "Perhaps she is claiming the woman's privilege that in an argument she does not have to use reason." (Page 6)

> "It can be reasonably inferred that she believes that fact that she is the breadwinner of the family should be publicized so that all will know her husband has been emasculated and that she is the head of the family." (Page 7)

> ". . . indicating that perhaps Mrs. Hauply's need was not for a change of name but for a competent psychiatrist." (Pages 9 and 10)

"Namely, a sick and confused woman, unhappy and unsatisfied with her marriage, unable to determine what she wants to do with her life." (Page 10)

". . . because she was a kind of odd ball . . ." (Page 10)

"[In filing a claim for hospitalization] the computer would probably fail to function and the company refuse to pay on the grounds that it was not liable for hospitalization of a mistress under the terms of a family policy." (Page 11)

As a theoretical matter, emotional reactions are divorced from the rule of law, but I must reluctantly confess that my adverse reaction cannot be restrained here.

### DISSENTING OPINION

PRENTICE, J.—I dissent from the majority opinion because I see no mandate in the statute to grant the petition. The first section of the statute[1] provides that the circuit court

---

1. CHAPTER 6 Change of Name.

   34-4-6-1 [3-801]. Petition to circuit court.—The circuit courts in the several counties of this state may change the names of natural persons on application by petition. [2 R.S. 1852, ch. 5, § 1, p. 238; Acts 1969, ch. 41, § 1, p. 32.]

   34-4-6-2 [3-802]. Petition, where filed.—Such petition may be filed with the circuit court of the county in which such person resides. [2 R.S. 1852, ch. 5, § 2, p. 238; Acts 1969, ch. 41, § 2, p. 32.]

   34-4-6-3 [3-803]. Notice by publication.—Upon a petition being filed for such change, the applicant shall give notice thereof by three [3] weekly publications in some newspaper of general circulation, printed and published in the county wherein said petition is filed in court, or, if no newspaper be printed therein, in a newspaper printed and published nearest thereto in some adjoining county, the last of which weekly publications shall be published at least thirty [30] days prior to the day when such petition shall be heard as therein indicated. [2 R.S. 1852, ch. 5, § 3, p. 238; Acts 1943, ch. 209, § 1, p. 619.]

   34-4-6-4 [3-804]. Publication, proof, copy or order filed.—Proof of the publication required in this act [34-4-6-1—34-4-6-5] shall be made by filing a copy of such published notice, verified by the affidavit of a disinterested person, and when such proof of such publication is made, the court shall proceed to hear and determine said petition and make such order and decree therein as to such court shall seem just and reasonable. [2 R.S. 1852, ch. 5, § 4, p. 238; Acts 1905, ch. 151, § 1, p. 447; 1969, ch. 41, § 3, p. 32.

   34-4-6-5 [3-805]. Copy of decree as evidence.—A copy of the decree of such court, changing the name of any natural person,

"*may*" change names. (Emphasis added). After providing for the procedure to be followed, the fourth section of the statute provides that the court "shall proceed to hear and determine said petition and make such order and decree therein *as to such court shall seem just and reasonable.*" (Emphasis added). This language makes it clear that the Legislature intended to grant a privilege where circumstances warranted.

It is not only the individual who must be concerned with his name. The state, its institutions and society in general *must also deal with it.* I shudder to think of the governmental and business records that must be revised and the confusion that will ultimately result, merely to accommodate the appellant's most unorthodox caprice.

There is no constitutional or inherent right to compel legal sanction of a change of name, notwithstanding the right at common law to assume a new name so long as it is not for a fraudulent or illegal purpose. The mere assumption of a different name, as opposed to legal sanction thereof, casts little if any burden upon others, because others are free to recognize it or not, as they wish. This is not the case when the change has been given the sanction of a court decree.

Recognizing that there are circumstances under which a legally sanctioned change of name may be warranted, notwithstanding its attendant burdens, the Legislature provided for such. In so doing, it placed the responsibility for making the determination of "reasonableness" in the circuit courts. It is clear to me that a petitioner, under the statute, should have the burden of establishing that it is "just and reasonable" that the petition be granted and not merely that the petitioner desires it and is without fraudulent intent, as the majority holds. Otherwise, why is a hearing provided? Surely the

certified under the seal of such court by the clerk thereof, shall be sufficient evidence of the name of such person, and of such a change having been made, in any court of this state. [2 R.S. 1852, ch. 5, § 5, p. 238; Acts 1969, ch. 41, § 4, p. 32.]

words "just and reasonable" encompass something more than the absence of fraud. Further, in the absence of second-party intervention, how is a fraudulent intent to be discerned? Under this decision, where is the court's discretion, if a petitioner says, "I want to change my name and I have no fraudulent intent?"

The decision of the trial court resulted from the exercise of sound discretion, and not abuse. It was simply a determination that the reasons of the petitioner for desiring a change of name did not warrant the inconvenience that would thereby be inflicted upon the state and society. This was a "just and reasonable" determination, because the petitioner's stated reasons for desiring the change indicate nothing but whimsey and an unusual psychological quirk. I know of no reason why the law should be concerned with such trivia.

Petitioner's stated reasons for desiring the change of name were as follows:

"1. Marriage is an equal partnership and to require one partner to give up a name which has been her identity for 20 years, against her will, and not to require it of the male partner places additional burdens on the female which negates the equality of marriage.

"2. Requiring a female to mandatorily change her surname is an affront to her dignity.

"3. Impairment of individuality when dealing with the public.

"4. Impairment of professional pursuits—studied and trained as a licensed practical nurse under the surname of Howard, but now must practice as Hauptly.

"5. Diminution of self-confidence.

"6. Lack of recognition in theatrical profession in that petitioner performed under the name of Howard prior to marriage, and intends to pursue in the future, however, the use of the name 'Hauptly' will vitiate the past recognition of the name Howard and in addition is phonetically displeasing for theatrical purposes.

"7.  The name 'Hauptly' masks the ethnic heritage of petitioner which is English-Irish.

"8.  Petitioner's work as a licensed practical nurse requires the wearing of a name tag with the name 'Hauptly' which has caused confusion in pronunciation and family heritage in that petitioner feels she has been deprived of the opportunity to discuss her own heritage.

"9.  Petitioner is contemplating pursuit toward a legal degree and feels that her ultimate legal career will be seriously affected in that her achievements and work will not be judged on her own merits but on the relationship with her husband since he will also be practicing law.

"10.  To be able to use the name of her choice would make petitioner a happier person and thereby improve her relationships not only with her family but with the rest of the public.

"11.  Petitioner is not presently in default of any debt or obligation; has never filed nor is contemplating any action in bankruptcy; that the granting of her petition would not serve to deceive or defraud any person or organization or deprive the same of any right, property or any other thing of value to which said person or organization might be entitled."

I do not think that the State's counsel was warranted in referring to the appellant in his brief as an "odd ball." However, assuming that her viewpoint upon surnames is a true reflection of her personality, it is apparent to me that she is one of a very small minority.

It is fortunate that most people are content with their legal names, because today's decision mandates the courts to change any person's name upon petition, absent a showing of fraudulent intent. A husband may change his name, notwithstanding his wife's objections; and she may change her's without his consent. A child may change his name to something different from that of either parent, although he may be a minor residing with and dependent upon them. The village drunk may legally change his name to that of

the circuit court judge, and the village whore may change her's to that of the judge's wife. It seems to me that it could become very difficult to keep track of people and very strange indeed that the law should have to sanction such unjust and unreasonable results, notwithstanding that the authorizing statute provides only for an order that seems "just and reasonable."

NOTE.—Reported at 312 N.E.2d 857.