EDDIE JONES, PETITIONER v. JULIE McDOWELL AND TRENDA JUNAE McDOWELL, BY AND THROUGH HER GUARDIAN AD LITEM ERNESTINE McDOWELL, RESPONDENTS v. DR. SARAH MORROW, SECRETARY OF HUMAN RESOURCES AND DR. RONALD H. LEVINE, STATE REGISTRAR OF VITAL STATISTICS, THIRD-PARTY PETITIONERS

No. 8014SC1000

(Filed 18 August 1981)

1. **Bastards § 13; Constitutional Law § 23— liberties protected by the Due Process Clause—retaining surname of illegitimate child**

   The mother of an illegitimate child has a Fourteenth Amendment due process interest in retaining the surname given her child at birth and the father, seeking to legitimize the child, the Secretary of Human Resources, and the State Registrar of Vital Statistics can be enjoined from changing the child's name to the father's by issuing a new birth certificate upon legitimation.

2. **Bastards § 13; Constitutional Law §§ 20, 23— requiring surname of illegitimate child be changed to that of father—denies mother equal protection**

   Petitioners failed to meet the burden of advancing an "exceedingly persuasive justification" in requiring the surname of an illegitimate child to be changed to that of the father in legitimation proceedings pursuant to G.S. 49-10 and 49-13, and such a requirement denies the mother of an illegitimate child the equal protection of the laws and a protected liberty interest without due process of law.

APPEAL by respondents from *Jolly, Judge.* Judgment entered 25 June 1980 in Superior Court, DURHAM County. Heard in the Court of Appeals 28 April 1981.

Petitioner brought this special proceeding pursuant to G.S. 49-10 to legitimate the child Trenda Junae McDowell (Trenda), born out of wedlock on 19 May 1977 to respondent Julie McDowell with whom the child resides. The respondent, Julie McDowell, answered, admitting that Jones was the father of

Trenda, seeking to join the Secretary of Human Resources and the Registrar of Vital Statistics as parties to the proceeding, seeking to enjoin these third-party petitioners from changing Trenda's surname to Jones by issuing a new birth certificate pursuant to G.S. 49-13, and alleging that the statutory scheme, G.S. 49-10 and 49-13, which would cause Trenda's surname to be changed to the surname of the father following legitimation, violates respondent's rights under the constitutions of North Carolina and the United States. The Secretary of Human Resources and the Registrar of Vital Statistics were joined as third-party petitioners and petitioners moved for summary judgment.

In granting petitioner's motion for summary judgment, the trial judge concluded as follows:

1. Petitioner is the father of the minor child, Trenda Junae McDowell, and the child should be legitimated pursuant to N.C. Gen. Stat. § 49-10.

2. North Carolina's statutory scheme for legitimation, N.C. Gen. Stat. §§ 49-10 and 49-13, is constitutional and therefore the North Carolina Secretary of Human Resources and the Registrar of Vital Statistics of the State of North Carolina should not be enjoined from changing the surname of the minor child to the surname of the father.

3. Respondents do not have a property interest in the name of the child.

4. The changing of the surname of the child to the surname of the father does not deprive respondents of property without due process of law under the Constitutions of the United States and North Carolina.

5. Any procedural and substantive due process rights of respondents and the minor child are protected under Gen. Stat. §§ 49-10 and 49-13.

6. Gen. Stat. §§ 49-10 and 49-13 are not arbitrary or capricious.

7. Gen. Stat. §§ 49-10 and 49-13 do not violate the equal protection clauses of the Constitutions of the United States and North Carolina.

8. Gen. Stat. §§ 49-10 and 49-13 are not special legislation and do not violate the Constitution of North Carolina, Article II, § 24.

Respondents have appealed.

*North Central Legal Assistance Program, by Charles A. Bentley, Jr., for petitioner-appellee.*

*Attorney General Rufus L. Edmisten, by Associate Attorney Sarah C. Young, for third-party petitioners-appellees.*

*Thompson & McAllaster, by Sharon A. Thompson, for respondents-appellants.*

WELLS, Judge.

[1] The initial question to be determined in this appeal is whether respondents have a constitutionally protected liberty or privacy interest in retaining Trenda Junae McDowell's surname, of which they cannot be deprived without due process of law.[1] The Supreme Court of the United States has held in a number of recent cases that the "freedom of personal choice in matters of . . . family life is one of the liberties protected by the Due Process Clause of the Fourteenth Amendment." *Smith v. Organization of Foster Families,* 431 U.S. 816, 842, 97 S.Ct. 2094, 2108, 53 L.Ed. 2d 14, 33 (1977), *quoting with approval Cleveland Board of Education v. LaFleur,* 414 U.S. 632, 94 S.Ct. 791, 39 L.Ed. 2d 52 (1974). *See also Roe v. Wade,* 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed. 2d 147 (1973); *Stanley v. Illinois,* 405 U.S. 645, 92 S.Ct. 1208, 31 L.Ed. 2d 551 (1972); *Griswold v. Connecticut,* 381 U.S. 479, 85 S.Ct. 1678, 14 L.Ed. 2d 510 (1965). We hold that this constitutional protection of certain matters of family life extends to the interest of the mother of an illegitimate child in retaining the surname given the child at birth. *See Jech v. Burch,* 466 F. Supp. 714 (D. Haw. 1979); *Secretary of the Commonwealth v. City Clerk of*

---

1. Although respondents contend otherwise, the question of respondents' interest in *choosing* Trenda's name was not before the trial court and is not before us. Trenda's surname was established at birth under pertinent provisions of Chapter 130 of the General Statutes dealing with birth registration. Our opinion is confined to the narrow and specific question of respondents' interest in *retaining* Trenda's surname in the context of a legitimation proceeding under the applicable provisions of Chapter 49 of the General Statutes.

*Lowell,* 373 Mass. 178, 366 N.E. 2d 717 (1977); *Roe v. Conn,* 417 F. Supp. 769 (M.D. Ala. 1976); *see also dissenting opinion in Rice v. Dept. of Health & Rehabilitative,* 386 So. 2d 844 (1980). The petitioners contend that the statutory scheme of notice and hearing under G.S. 49-10 and 49-13 satisfies the dictates of the due process clause. Mere notice and hearing, however, is not enough to supply due process if the statutory scheme also predetermines the outcome, as is the case here. It is arbitrary action by the State, however accomplished, that the due process clause guards against.

[2] The second question for our determination, therefore, is whether the statutory scheme for changing an illegitimate child's surname upon legitimation pursuant to the provisions of G.S. 49-10 and 49-13 utilizes a gender based classification repugnant to respondent's rights under the Fourteenth Amendment to equal protection of laws.[2] The question of the validity of gender based statutory classification has been before the United States

---

2. § 49-10. Legitimation. — The putative father of any child born out of wedlock, whether such father resides in North Carolina or not, may apply by a verified written petition, filed in a special proceeding in the superior court of the county in which the putative father resides or in the superior court of the county in which the child resides, praying that such child be declared legitimate. The mother, if living, and the child shall be necessary parties to the proceeding, and the full names of the father, mother and the child shall be set out in the petition. A certified copy of a certificate of birth of the child shall be attached to the petition. If it appears to the court that the petitioner is the father of the child, the court may thereupon declare and pronounce the child legitimated; and the full names of the father, mother and the child shall be set out in the court order decreeing legitimation of the child. The clerk of the court shall record the order in the record of orders and decrees and it shall be cross-indexed under the name of the father as plaintiff or petitioner on the plaintiff's side of the cross-index, and under the name of the mother, and the child as defendants or respondents on the defendants' side of the cross-index.

§ 49-13. New birth certificate on legitimation. — A certified copy of the order of legitimation when issued under the provisions of G.S. 49-10 shall be sent by the clerk of the superior court under his official seal to the State Registrar of Vital Statistics who shall then make the new birth certificate bearing the full name of the father, and change the surname of the child so that it will be the same as the surname of the father.

When a child is legitimated under the provisions of G.S. 49-12, the State Registrar of Vital Statistics shall make a new birth certificate bearing the full name of the father upon presentation of a certified copy of the certificate of marriage of the father and mother and change the surname of the child so that it will be the same as the surname of the father.

Supreme Court in a number of recent cases. We will begin our review of those cases with *Reed v. Reed,* 404 U.S. 71, 92 S.Ct. 251, 30 L.Ed. 2d 225 (1971). In *Reed,* the Court ruled invalid a provision of the Idaho Probate Code that males must be preferred to females where persons of equal entitlement seek to administer an estate. We quote in pertinent part from the opinion of the Court:

> In such situations, § 15-314 provides that different treatment be accorded to the applicants on the basis of their sex; it thus establishes a classification subject to scrutiny under the Equal Protection Clause.
>
> In applying that clause, this Court has consistently recognized that the Fourteenth Amendment does not deny to States the power to treat different classes of persons in different ways. [Citations omitted.] The Equal Protection Clause of that amendment does, however, deny to States the power to legislate that different treatment be accorded to persons placed by a statute into different classes on the basis of criteria wholly unrelated to the objective of that statute. A classification "must be reasonable, not arbitrary, and must rest upon some ground of difference having a fair and substantial relation to the object of the legislation, so that all persons similarly circumstanced shall be treated alike." [Citation omitted.]

404 U.S. at 75-76, 92 S.Ct. at 253-54, 30 L.Ed. 2d at 229. The Court concluded that no such legitimate objective was advanced by the disputed provisions of the Idaho Probate Code.

In *Stanley v. Illinois, supra,* the Court considered, in light of the fact that Illinois law allows married fathers whether divorced, widowed or separated, and mothers even if unwed, the benefit of the presumption that they are fit to raise their children, the validity of certain provisions of Illinois law which created a presumption that the father of an illegitimate child is unfit for parenthood. The Court concluded there was both a due process violation in that unwed fathers were denied a hearing on the question of fitness and an equal protection violation in that unwed fathers were treated differently from other parents whose custody of their children was challenged by the State.

In *Craig v. Boren,* 429 U.S. 190, 97 S.Ct. 451, 50 L.Ed. 2d 397 (1976), the Court considered the question of whether an Oklahoma

statutory scheme prohibiting the sale of 3.2 percent beer to males under the age of twenty-one and females under the age of eighteen constituted a gender based discrimination that denied to males 18-20 years of age the equal protection of the laws. For a summary of pertinent decisions in point and for a restatement of the rule enunciated in *Reed, supra,* we quote in pertinent part from the Court's opinion:

> Analysis may appropriately begin with the reminder that Reed emphasized that statutory classifications that distinguish between males and females are "subject to scrutiny under the Equal Protection Clause." 404 US, at 75, 30 L Ed 2d 225, 92 S Ct 251. To withstand constitutional challenge, previous cases establish that classifications by gender must serve important governmental objectives and must be substantially related to achievement of those objectives. Thus, in Reed, the objectives of "reducing the workload on probate courts," . . . and "avoiding intrafamily controversy," . . . were deemed of insufficient importance to sustain use of an overt gender criterion in the appointment of administrators of intestate decedents' estates. Decisions following Reed similarly have rejected administrative ease and convenience as sufficiently important objectives to justify gender-based classifications. *See, e.g., Stanley v. Illinois,* 405 US 645, 656, 31 L Ed 2d 551, 92 S Ct 1208 (1972); *Frontiero v. Richardson,* 411 US 677, 690, 36 L Ed 2d 583, 93 S Ct 1764 (1973); *cf. Schlesinger v. Ballard,* 419 US 498, 506-507, 42 L Ed 2d 610, 95 S Ct 572 (1975). And only two Terms ago, *Stanton v. Stanton,* 421 US 7, 43 L Ed 2d 688, 95 S Ct 1373 (1975), expressly stating that *Reed v. Reed* was "controlling," 421 US, at 13, 43 L Ed 2d 688, 95 S Ct 1373, held that Reed required invalidation of a Utah differential age-of-majority statute, notwithstanding the statute's coincidence with and furtherance of the State's purpose of fostering "old notions" of role typing and preparing boys for their expected performance in the economic and political worlds. 421 US, at 14-15, 43 L Ed 2d 688, 95 S Ct 1373.

> *Reed v. Reed* has also provided the underpinning for decisions that have invalidated statutes employing gender as an inaccurate proxy for other, more germane bases of classification. Hence, "archaic and overbroad" generalizations,

*Schlesinger v. Ballard,* supra, at 508, 42 L Ed 2d 610, 95 S Ct 572, concerning the financial position of servicewomen, *Frontiero v. Richardson,* supra, at 689 n 23, 36 L Ed 2d 583, 93 S Ct 1764, and working women, *Weinberger v. Wiesenfeld,* 420 US 636, 643, 43 L Ed 2d 514, 95 S Ct 1225 (1975), could not justify use of a gender line in determining eligibility for certain governmental entitlements. Similarly, increasingly outdated misconceptions concerning the role of females in the home rather than in the "marketplace and world of ideas" were rejected as loose-fitting characterizations incapable of supporting state statutory schemes that were premised upon their accuracy. *Stanton v. Stanton,* supra; *Taylor v. Louisiana,* 419 US 522, 535 n 17, 42 L Ed 2d 690, 95 S Ct 692 (1975). In light of the weak congruence ʲbetween gender and the characteristic or trait that gender purported to represent, it was necessary that the legislatures choose either to realign their substantive laws in a gender-neutral fashion, or to adopt procedures for identifying those instances where the sex-centered generalization actually comported with fact. *See, e.g., Stanley v. Illinois,* supra, at 658, 31 L Ed 2d 551, 92 S Ct 1208, *cf. Cleveland Bd. of Ed. v. LaFleur,* 414 US 632, 650, 39 L Ed 2d 52, 94 S Ct 791, 67 Ohio Ops 2d 126 (1974).

In this case, too, "Reed, we feel, is controlling . . . ." *Stanton v. Stanton,* supra, at 13, 43 L Ed 2d 688, 95 S Ct 1373. We turn then to the question whether, under Reed, the difference between males and females with respect to the purchase of 3.2% beer warrants the differential in age drawn by the Oklahoma statute. We conclude that it does not.

429 U.S. at 197-99, 97 S.Ct. at 457-58, 50 L.Ed. 2d at 407-408.

In more recent cases, the Court has restated the rules laid down in *Craig* and *Reed.* "Gender-based distinctions 'must serve important governmental objectives and must be substantially related to achievement of those objectives' in order to withstand judicial scrutiny under the Equal Protection Clause. [Citations omitted.]" *Caban v. Mohammed,* 441 U.S. 380, 388, 99 S.Ct. 1760, 1766, 60 L.Ed. 2d 297, 304-305 (1979). "Classifications based upon gender . . . have traditionally been the touchstone for pervasive and often subtle discrimination. [Citation omitted.] This Court's recent cases teach that such classifications must bear a close and

substantial relationship to important governmental objectives
[citation omitted] and are in many settings unconstitutional. [Cita-
tions omitted]" *Personnel Administrator of Mass. v. Feeney,* 442
U.S. 256, 273, 99 S.Ct. 2282, 2293, 60 L.Ed. 2d 870, 883-84 (1979).
*See also Kirchberg v. Feenstra,* --- U.S. --- , 101 S.Ct. 1195, 67
L.Ed. 2d 428 (1981).

Petitioners' argument that the statutory scheme for
establishing the filial relationship between illegitimate children
and their natural fathers serves a valid state interest and pur-
pose cannot be questioned. The underlying validity of the
statutory scheme cannot, however, serve to answer respondents'
contentions that the requirement of change of surname causes
this otherwise valid statutory purpose to operate in an invalid
way. Petitioner has not met the burden of advancing an "ex-
ceedingly persuasive justification"; *Kirchberg v. Feenstra, supra,*
for the name change requirement. Petitioners argue that because
children born of married parents have recorded on their birth cer-
tificates the surname of the husband of their mother, the re-
quirements of G.S. 49-10 and 49-13 promote consistency and
administrative convenience. This argument is not persuasive
justification. We see no convenience to the State in requiring the
surname of the child to be changed to that of the father in pro-
ceedings pursuant to G.S. 49-10 and 49-13. Petitioners cite *Trim-
ble v. Gordon,* 430 U.S. 762, 97 S.Ct. 1459, 52 L.Ed. 2d 31 (1977);
*Lalli v. Lalli,* 439 U.S. 259, 99 S.Ct. 518, 58 L.Ed. 2d 503 (1978);
*Mitchell v. Freuler,* 297 N.C. 206, 254 S.E. 2d 762 (1979); and *For-
bush v. Wallace,* 341 F. Supp. 217 (M.D. Ala. 1971), *aff'd* 405 U.S.
970, 92 S.Ct. 1197, 31 L.Ed. 2d 246 (1972) in support of their "ad-
ministrative convenience" argument. *Trimble* must be distinguish-
ed. It dealt with the balancing of the rights to inherit as between
illegitimate and legitimate children. *Lalli* and  *Mitchell* fall into
the same category. *Forbush,* however, must be further
distinguished. In *Forbush,* the female plaintiff challenged the
requirement of the Alabama Department of Public Safety that
married females use their husband's surname in seeking and ob-
taining a driver's license. The *Forbush* Court recognized the in-
herent gender-based discrimination in such a requirement, but
held that it served a substantial State interest: the State's need
to maintain control over persons issued driver's licenses. Peti-
tioners have not asserted, much less demonstrated, any com-

parable interest of the State of North Carolina in maintaining control over illegitimate children who may become the beneficiaries of proceedings under G.S. 49-10 and 49-13.

We hold that the valid purpose served by the provisions of G.S. 49-10 and 49-13 of establishing the filial relationship between illegitimate children and their fathers is not enhanced, advanced, or served in any useful or justifiable way by the additional requirement that the child's surname be changed to that of the father. Such a requirement does not bear a close and substantial relationship to the important governmental objective underlying the statutes disputed here. Such a requirement denies the mother of an illegitimate child the equal protection of the laws, and because it requires arbitrary action on the part of an agency of the State, it denies such mothers a protected liberty interest without due process of law.

A proceeding under G.S. 49-10, while being entirely voluntary on the part of the putative father of the child born out of wedlock, nevertheless carries with it results affecting the putative father in two profound respects as provided by G.S. 49-11.[3] It is apparent, therefore, that petitioner Eddie Jones, the putative father in this proceeding has such a property interest at stake as will afford him due process. *Mitchell v. Freuler, supra.* In the light of our opinion that the name change *requirement* of G.S. 49-13 is invalid, petitioner Jones must be afforded the choice of either continuing this action with the knowledge that Trenda Junae will continue to bear her mother's surname upon legitimation, or withdrawing his petition by voluntary dismissal. Accordingly, it is our opinion that the judgment of the trial court must be reversed in its entirety and that this matter must be remanded for further proceedings consistent with this opinion.

---

3. § 49-11. Effects of legitimation.—The effect of legitimation under G.S. 49-10, shall be to impose upon the father and mother all of the lawful parental privileges and rights, as well as all of the obligations which parents owe to their lawful issue, and to the same extent as if said child had been born in wedlock, and to entitle such child by succession, inheritance or distribution, to take real and personal property by, through, and from his or her father and mother as if such child had been born in lawful wedlock. In case of death and intestacy, the real and personal estate of such child shall descend and be distributed according to the Intestate Succession Act as if he had been born in lawful wedlock.

Reversed and remanded.

Judges HEDRICK and CLARK concur.