**John DOE, Jane Doe, and Jane Doe as Next Friend of Their Infant Child, Baby Doe, Appellants (Plaintiff below),**

v.

**The HANCOCK COUNTY BOARD OF HEALTH and Indiana State Board of Health, Appellees (Defendants below).**

**No. 782S249.**

Supreme Court of Indiana.

July 1, 1982.

Ralph Ogden, M. Anne Wilcox, Wilcox & Ogden, Indianapolis, for appellants.

Linley E. Pearson, Atty. Gen., Rollin E. Thompson, Asst. Atty. Gen., Indianapolis, for appellees.

* This case was not assigned to this office until

ORDER

Appellant's "Verified petition for Transfer" is Granted, without Opinion, and the Court hereby dismisses this cause, this 1st day of July, 1982. This Court sees no reason to interfere with the legislative policies in handling statistical data. This is especially true in the case at bar in view of the many legal methods available to provide a desired name for the child. The State's verified motion to Dismiss is Granted for the reasons stated therein.

HUNTER, J., dissents to the grant of petition to transfer and dismissal.

HUNTER, Justice,* dissenting to grant of petition to transfer and dismissal.

I dissent to the majority's dismissal of this case on a procedural technicality. *The action of this Court in dismissing the matter on a technical basis effectively deprives the appellants of their constitutional rights of appellate review.* This case involves a direct and substantial challenge to the constitutionality of an Indiana statute and involves a substantial issue of individual freedom. After an adverse decision in the trial court, appellants timely perfected their appeal to the Court of Appeals, First District, by the filing of the record of the proceedings and their brief. However, appellees filed their brief one day late and the Court of Appeals denied their verified petition to file a belated brief. This action resulted in the effective dismissal of the case under Ind.R.Ap.P. 8.1(A). The record shows that appellees' brief was delivered to the Clerk of the Court one day late due to an error in calculation of the deadline for filing. Appellants supported the appellees' petition to file a belated brief because of the need to have adequate briefs by both parties dealing with the constitutional issues raised in the case. Following the court's refusal to accept the belated filing of the appellees' brief, appellants filed their verified petition to transfer. I would grant this petition to transfer in order to consider the case on its merits.

April 13, 1982.

It is well settled that the priority under our appellate rules is for the reviewing court to decide cases on their merits whenever possible. The courts have the discretion to excuse technical failures in certain circumstances where no one is unduly prejudiced thereby.

> "Although our procedural rules are extremely important, it must be kept in mind that they are merely a means for achieving the ultimate end of orderly and speedy justice. We must examine our technical rules closely when it appears that invoking them would defeat justice; otherwise, we become slaves to the technicalities themselves and they acquire the position of being the ends instead of the means.

> \*   \*   \*   \*   \*   \*

> " 'Our function is to serve the truth and to decide legal issues, not clear our dockets by utilization of unnecessarily narrow technical interpretations.' " *American States Insurance Company v. State of Indiana ex rel. Jennings*, (1972) 258 Ind. 637, 640–1; 283 N.E.2d 529, 531 (citations omitted).

Furthermore, it is clear that the consideration of appellees' briefs which are not timely filed is entirely discretionary with the court under the authority of Ind.R. Ap.P. 8.1(C). *State ex rel. American Reclamation v. Klatte*, (1971) 256 Ind. 566, 270 N.E.2d 872. The matter under review in this case is of great public importance as it involves a consideration of the constitutionally protected common law right of parents to name their children. Equal protection issues are raised involving both a gender-based classification and a discrimination based upon the status of illegitimacy. For all of these reasons, justice will best be served if this case is considered upon its merits under our discretionary authority.

The statute under consideration here is Ind.Code § 16–1–16–15 (Burns 1974) which states:

> "*Illegitimate child—Name.*—A child born illegitimate shall be recorded under the name of the mother."

Appellants in this case, who are living together but are not married, wanted to register their baby under the surname of the father on the birth certificate. The Hancock County Board of Health would not permit the baby to be registered under the father's name. The trial court granted summary judgment for the Board of Health, upholding the constitutionality of the statute. There is no comparable statute restricting the choice of name under which married parents may register their child on a birth certificate.

Appellants now contend that the statute, Ind.Code § 16–1–16–15, *supra*, which requires that a child born illegitimate be given the mother's surname, violates their constitutional rights to privacy and substantive due process, their right to participate freely in the selection of their child's name, and their right to equal protection of the law as guaranteed by the Fourteenth Amendment to the United States Constitution.

It is well settled by common law that a person may change his name at will, without resort to legal proceedings, by merely adopting another name, provided that this is done for an honest purpose. We have clearly held that our statutes dealing with a change of surname by court order are not a restriction on this common law principle but are merely in aid of the common law. *In re Hauptly*, (1974) 262 Ind. 150, 312 N.E.2d 857; *D. R. S. v. R. S. H.*, (1980) Ind.App., 412 N.E.2d 1257. We have stated:

> "[T]here is no legal requirement that any person go through the courts to establish a legal change of name. The statute merely provides for an orderly record of the change of name in order to avoid future confusion.  \* \* \* Indiana has no statute that would prevent the taking of an assumed name without judicial order." *In re Hauptly, supra*, 262 Ind. at 152, 312 N.E.2d at 857.

This common law principle of the right of any person to change his name at will has been consistently upheld in other jurisdictions. *Thomas v. Thomas*, (1981) 100 Ill. App.3d 1080, 56 Ill.Dec. 604, 427 N.E.2d 1009; *Secretary of the Commonwealth v.*

*City Clerk of Lowell*, (1977) 373 Mass. 178, 366 N.E.2d 717; *Custer v. Bonadies*, (1974) 30 Conn.Sup. 385, 318 A.2d 639; *State ex rel. Krupa v. Green*, (1961) 114 Ohio App. 497, 177 N.E.2d 616.

An individual's freedom of choice in the matter of names extends to the right of parents to give any name of their choice to their children. In Massachusetts, the appellate court cited cases dating back to 1896 which upheld the principle that the naming of a child is a right and a privilege belonging to the child's parents. *D'Ambrosio v. Rizzo*, (1981) —— Mass.App. ——, 425 N.E.2d 369; *accord Doe v. Dunning*, (1976) 87 Wash.2d 50, 549 P.2d 1. The parents, whether married or not, may change their own names at will and need not have the same surname. They are clearly free to give their child any surname they wish.

The principles of freedom of choice and parental control are not abrogated by the fact that a child is born to unmarried parents. We have consistently recognized that the mother of an illegitimate child has the primary right to the custody and control of her child and that both parents are usually under an obligation to such a child to provide for its necessary maintenance and support. *Glansman v. Ledbetter*, (1921) 190 Ind. 505, 130 N.E. 230; *Dalton v. State*, (1843) 6 Blackford 357; *Sullivan v. O'Sullivan*, (1959) 130 Ind.App. 142, 162 N.E.2d 315. It clearly follows that since unmarried parents have the same obligations and duties to their child as do married parents, they also have the same freedom of choice in determining their child's initial surname.

In this case, both parents of the child agree that they wish to give their child the father's surname. However, there is no legal reason which would prevent the mother of an illegitimate child from choosing any name she wishes for her child in the absence of any objection from the putative father or evidence of a dishonest purpose on her part, since she has the primary right to the custody and control of the child. *Dalton v. State, supra.*

The naming of one's own child is a matter of personal choice in the area of family life which the United States Supreme Court has long held must be accorded special protection. Specifically, that Court has held in a number of recent cases that freedom of personal choice in the matters of family life is one of the liberties protected by the due process clause of the Fourteenth Amendment, and that in the private realm of family life there is a right to make decisions free of the coercive power of government. *Smith v. Organization of Foster Families for Equality and Reform*, (1977) 431 U.S. 816, 97 S.Ct. 2094, 53 L.Ed.2d 14, and cases cited.

While the specific issue of choice of a child's name has not come before the United States Supreme Court, other jurisdictions have found that the naming of one's own child is a constitutionally protected right. The Federal District Court in Hawaii found that the Hawaii statute restricting the choice of names a married couple could give their child was unconstitutional. *Jech v. Burch*, (D.Hawaii 1979) 466 F.Supp. 714. The court held:

"[A] proper interpretation of Anglo-American political and legal history and precedent leads to the conclusion that parents have a common law right to give their child any name they wish, and that the Fourteenth Amendment protects this right from arbitrary state action."

\*  \*  \*  \*  \*  \*

"What is the state interest in refusing to allow parents to give their child at birth a name which they may immediately confer by way of change of name? I fail to see any such interest.

\*  \*  \*  \*  \*  \*

"The statutory provision for change of name is not a substitute for the right to insist that one's child *at birth* was given the *original name* designated. This merely restates the first proposition that the naming of a child is protected against arbitrary or unreasonable state action. *Id.* at 719, 720 (emphasis original).

*Accord O'Brien v. Tilson*, (E.D.N.C.1981) 523 F.Supp. 494; *D'Ambrosio v. Rizzo, supra; cf. Jones v. McDowell*, (1981) 53 N.C.

App. 434, 281 S.E.2d 192 (upholding right of mother of illegitimate child to retain the surname given the child at birth after a legitimation proceeding).

Since there is a constitutionally protected right of privacy and freedom of choice in naming one's own child, the state cannot arbitrarily interfere with this right. There are also equal protection issues raised by the fact that the statute distinguishes between legitimate children, who may be given any name, and illegitimate children, who must bear the mother's name. Furthermore, the statute creates a classification based on gender, in that it mandates that the child shall bear the mother's name, but not the father's.

The United States Supreme Court has repeatedly held:

> "Gender-based distinctions 'must serve important governmental objectives and must be substantially related to achievement of those objectives' in order to withstand judicial scrutiny under the Equal Protection Clause." *Caban v. Mohammed*, (1979) 441 U.S. 380, 388, 99 S.Ct. 1760, 1766, 60 L.Ed.2d 297, 304–305 (citations omitted).

*Personnel Administrator of Mass. v. Feeney*, (1979) 442 U.S. 256, 99 S.Ct. 2282, 60 L.Ed.2d 870; *Stanley v. Illinois*, (1972) 405 U.S. 645, 92 S.Ct. 1208, 31 L.Ed.2d 551; *Reed v. Reed*, (1971) 404 U.S. 71, 92 S.Ct. 251, 30 L.Ed.2d 225. In this case, it is only necessary to apply the minimum standard of constitutional protection, that of requiring that the statute have a reasonable relation to a legitimate state interest, to find that the statute in question is defective.

The state asserts that several legitimate state interests are served by this statute. The first is that the State Board of Health is charged with the duty of collecting and recording the vital statistics of all individuals within the state and therefore must keep complete and accurate records. There is no question but that the keeping of vital

statistics is a legitimate state interest and the requirement that the birth of a child be reported is a valid part of that interest. However, it does not logically follow that the duty to record all births gives the state the right to arbitrarily assign certain names to one particular classification of children. The birth certificate form has ample provision for recording complete and accurate facts as there is space for the full names of both parents to be listed along with their ages and places of birth. The name given the child does not affect the accuracy or completeness of the information required by the form.

Furthermore, the Board of Health is free to file the form under either the father's surname, the mother's surname, the child's surname, or some type of cross-indexation among all three if the three are different. The law already provides for the possibility that a child's surname will be entirely different from either his mother's or father's name in the case of legitimate children, and it appears that in this age of electronic data processing the state is easily able to collect and accurately record the necessary information about these births. The state has not shown that allowing freedom of choice in the selection of an illegitimate child's surname will interfere with its duty to record vital statistics.

The state also claims that the statute will help prevent fraud by a mother who might attempt to name her child after a man who is not the child's father. This argument is without merit since it is clear that the use of a name does not legally imply that a biological relationship exists between persons with that same name.[1] The only legal purpose served by a name is to identify the particular individual who uses it for that purpose. *See* 57 Am.Jur.2d, *Name* § 1 (1971); *State ex rel. Krupa v. Green, supra*. Furthermore, since there is no requirement that information provided on the birth certificate be verified or corroborated indepen-

1. In paternity actions, the burden of proof is on the mother to prove that the defendant is the father of the child by showing that there was an act of intercourse coupled with the probabil-

ity of conception at that time. *O. Q. v. L. R.*, (1975) 164 Ind.App. 227, 328 N.E.2d 233; Ind. Code § 31–6–6.1–1, *et seq.* (Burns 1980).

dently of the person providing it, the information stated on the certificate is without probative value. *Cf. Gibralter Mutual Life Insurance Company v. Pitts,* (1962) 133 Ind. App. 361, 182 N.E.2d 450 (holding that the cause of death stated on a death certificate furnished by the Board of Health was without probative value). Since the use of a particular surname has no legal effect on other individuals with that same surname, the state can assert no right to restrict the choice of surnames on that basis.

Likewise, there is no merit to the argument that it would be easier to trace the "changing status" of the child if the surname were the same as the mother's. As pointed out above, both the mother and father of any child may change their names at will and these changes are not always recorded. As the Massachusetts Supreme Court pointed out in rejecting the argument that it would be easier to trace ancestral chains if the children of married parents were always given the father's surname:

"Not all changes in men's names are noted on any public record. The birth certificates in the record before us show the father's name, birthplace and age, but not the date or place of his marriage; there is no cross-reference to his birth or marriage record, and no assurance that he bore the same name at birth or on his marriage, either or both of which may have taken place outside Massachusetts. In practice the supposed ease of tracing ancestral chains is often a chimera." *Secretary of the Commonwealth v. City Clerk of Lowell, supra,* 366 N.E.2d at 724.

The state also asserts that giving an illegitimate child the same surname as his mother will protect his identity and insure confidential treatment of his records. There is no merit to this contention. The mother may change her own name at any time without a formal record being made thus breaking any trace of the "identity" of the child to her. The designation of the status of the child as "illegitimate" is indicated on the birth certificate in addition to any names which are recorded. Our present statutes require that all certificates

with the designation of "illegitimate" on them must be kept in a separate file and may not be released without a court order, Ind.Code § 16–1–19–3 (Burns 1974), in order to insure the confidential treatment of these records. There is no relationship between the name of the child and the confidentiality of the record.

The state finally asserts that a major purpose in requiring the children of unmarried parents to be given the mother's surname is the promotion of marriage and family life. The existence and importance of that state interest is unquestioned. What is at issue is whether the questioned statute will promote that interest. The state's argument is based upon the assumption that all parents wish to give their children their father's surname (or a surname other than the mother's) and therefore will marry in order to avoid giving their child the mother's surname. The state gives no proof that such an assumption is valid. Clearly, the principles of individual freedom of choice in the matter of names discussed above show that it is not valid.

In fact, it is becoming more and more common today to find children of married parents with surnames other than that of the father. The fact that a child bears the mother's surname is not necessarily a fact from which the marital status of the parents can be ascertained. While it has been considered customary for a woman to take her husband's surname upon marriage, it is not a legal requirement. As the Washington Supreme Court explained:

"Under well established principles of common law, a person is free to adopt and use, absent a statute to the contrary, any name that he or she sees fit so long as it is not done for any fraudulent purposes and does not infringe upon the rights of others. This common law right applies as well to the surnames of married women. While it may be that it is considered customary for a woman to take her husband's surname upon marriage, it is custom only and not a legal requirement.

\*    \*    \*    \*    \*    \*

"As more women exercise their right to retain their own surname after marriage, the likelihood that children will be given a surname other than the paternal surname increases. There are generally no statutes requiring married parents to give their child the father's surname; although customarly parents do, they have a choice and can freely exercise it. * * * Historically, it was not uncommon for children to take the mother's surname where she owned the most property or had the largest estate. Cultural heritage may also be a relevant consideration, for example, persons of Spanish ancestry often use both parents' surnames as the surname of the child.

"In summary, we know of no legal impediment which would prevent married parents from giving the child the mother's surname." *Doe v. Dunning, supra,* 549 P.2d at 3–4 (citations omitted).

Today, it is not unusual for children and parents to be living together with different last names, even in traditional married family units, since many marriages involve a divorced woman who has children and who changes her name to the name of her new husband. Furthermore, there is nothing in the law which would prevent any change of name on the part of either parents or children in any family at any time after a name is recorded on a birth certificate. Therefore, the state has failed to show that restricting the freedom of choice of unmarried parents in the name they are allowed to use for their child on a birth certificate has any reasonable relation to their asserted purpose of the promotion of marriage and family life.

For all of the above reasons, I find that the parents in this case have a constitutionally protected right to give their own child any surname they choose and Ind.Code § 16–1–16–15, *supra,* violates this right. The state has failed to show any reasonable relation to some legitimate purpose why this right should be curtailed.

I would grant transfer, reverse the judgment of the trial court and hold that Ind. Code § 16–1–16–15, *supra,* is unconstitutional.