IN THE MATTER OF THE ESTATE OF EDWARD GORDON STERN, DE-
CEASED, H. T. MULLEN, JR., ADMINISTRATOR OF THE ESTATE OF
EDWARD GORDON STERN v. CELIA STERN, ROBERT WEISS, MEL-
VENA W. TRAVALIA, AUGUST WEISS, EMMA W. JOHNSTON, AGNES
W. TEULON, WILLIAM WEISS, ADELE S. STEIN, A. EDWIN STERN,
JR., JENNIE W. MILLSTEIN, HARRY S. WENDER, FLORENCE
MARGARET W. LEHN, SHIRLEY JOAN W. UKRAINETZ, GEORGINA L.
GEPPERT, EVELYN L. BAETWALDT, HELEN L. McGOVERN, GORDON
LISSEL, JEAN L. GESCHWANDTNER, THERESA L. SEIDENS, JAMES
LISSELL AND ALL UNKNOWN HEIRS OF EDWARD GORDON STERN

No. 831SC152

(Filed 21 February 1984)

1. **Descent and Distribution § 8— no right of illegitimate's paternal heirs to share in estate**

   Paternal heirs of an illegitimate who died intestate were not entitled to
   share with the maternal heirs in the illegitimate's estate where there was no
   evidence that the putative father was ever judicially adjudged to be the illegit-
   imate's father as provided in G.S. 29-19(b)(1) or that he ever acknowledged his
   paternity as provided in G.S. 29-19(b)(2), notwithstanding the putative father's
   will sufficiently acknowledged the illegitimate as his son to permit the il-
   legitimate to inherit from his putative father pursuant to G.S. 29-19(d).

2. **Descent and Distribution § 8; Constitutional Law § 23.7— right of inheritance by illegitimate's paternal heirs—constitutionality of statute**

   While G.S. 29-19 classifies an illegitimate's mother (and her heirs) and the
   putative father (and his heirs) differently by placing the additional requirement
   on the father to establish his paternity by one of the statutorily prescribed
   methods before he is permitted to inherit from the illegitimate, this classifica-
   tion is substantially related to permissible State interests and does not violate
   the Equal Protection Clause of the Fourteenth Amendment to the U.S. Con-
   stitution.

   Judge JOHNSON dissenting.

APPEAL by respondent paternal heirs of Edward Gordon
Stern from *Allsbrook, Judge.* Order entered 16 September 1982 in
Superior Court, PASQUOTANK County. Heard in the Court of Ap-
peals 16 January 1984.

This is an appeal by the paternal heirs of Edward Gordon
Stern, an illegitimate who died intestate, from the order of the
Pasquotank County Superior Court directing that the decedent's
entire estate be distributed to his maternal heirs. The decedent,
Edward Gordon Stern, was born in 1927 in the province of

Saskatchewan, Canada and named Edward Gordon Weiss. His birth certificate does not list the name of either parent, but the evidence overwhelmingly indicates that he was the son of Hilda Weiss and Edward D. Stern who were living together at the time of his birth. Apparently, Edward D. Stern and Hilda Weiss (hereinafter referred to as decedent's father and mother) never married because of religious prohibitions in Canada at the time.

The decedent lived with his parents until his mother's death in 1933. Thereafter he remained with his father until he entered the Army many years later. Decedent's name is shown on his medical records as a baby and his school records as Edward Gordon Stern. These school records list Edward D. Stern as decedent's father. The evidence clearly shows Edward D. Stern considered the decedent to be his son and referred to him as such. Later in life, the decedent had his name officially changed to Edward Gordon Stern, both in the United States and in Canada. The name change in Canada was done at the request of Edward D. Stern so as to facilitate the identification of Edward Gordon Stern as his son in his will. In his last will, Edward D. Stern bequeathed "the residue of my estate to my son, Edward Gordon Stern, for his own use absolutely." In 1979 Edward D. Stern died leaving a residuary estate worth over $500,000.

In August of 1980, Edward Gordon Stern died intestate survived only by his aunts and uncles. At the time of his death, the decedent was a citizen and resident of Pasquotank County, North Carolina. The present proceeding was brought to determine the distributees of the decedent's estate. After hearing the evidence, the trial judge concluded that the decedent was survived by only the collateral kindred of his late mother and that the collateral kindred of the late Edward D. Stern were not entitled to share in the estate. From the order entered 16 September 1982, the respondent paternal heirs appealed.

*Jennette, Morrison, Austin and Halstead, by John S. Morrison and C. Glenn Austin, for respondent appellants.*

*Griffin, Gerdes, Mason, Brunson, Wilson and Jeffries, by Joseph M. Griffin and J. David Tolbert, for respondent appellees.*

WEBB, Judge.

[1]   The question presented on this appeal is whether the heirs of the alleged natural father of Edward Gordon Stern have any rights to the decedent's estate. We believe they do not and affirm the order directing that the decedent's estate be distributed only to his maternal heirs.

G.S. 29-19(a) provides that for purposes of intestate succession, an illegitimate shall be treated as if he were the legitimate child of his mother so that he is entitled to inherit by, through and from his mother and his other maternal kindred, and they are entitled to take from him. There is no dispute that the decedent was illegitimate and that the respondent maternal heirs are entitled to some share of the decedent's estate.

The right of a putative father and the paternal heirs to inherit by, through and from an intestate illegitimate is governed by G.S. 29-19(b) and (c) which state as follows, in pertinent part:

(b) For purposes of intestate succession, an illegitimate child shall be entitled to take by, through and from:

   (1) Any person who has been finally adjudged to be the father of such child pursuant to the provisions of G.S. 49-1 through 49-9 or the provisions of G.S. 49-14 through 49-16;

   (2) Any person who has acknowledged himself during his own lifetime and the child's lifetime to be the father of such child in a written instrument executed or acknowledged before a certifying officer named in G.S. 52-10(b) and filed during his own lifetime and the child's lifetime in the office of the clerk of superior court of the county where either he or the child resides.

   . . . .

(c) Any person described under subdivision (b)(1) or (2) above and his lineal and collateral kin shall be entitled to inherit by, through and from the illegitimate child.

The record is devoid of any evidence indicating that Edward D. Stern was ever judicially adjudged to be the decedent's father as

provided in G.S. 29-19(b)(1) or that he ever acknowledged his paternity as provided in G.S. 29-19(b)(2).

G.S. 29-19(d) provides a further basis through which an illegitimate may inherit from his putative father. That section provides that:

> (d) Any person who acknowledges himself to be the father of an illegitimate child in his duly probated last will shall be deemed to have intended that such child be treated as expressly provided for in said will or, in the absence of any express provision, the same as a legitimate child.

Edward D. Stern so acknowledged himself as the father of the decedent when he stated in his last will that he bequeathed his residuary estate to "my son, Edward Gordon Stern."

The appellant paternal heirs argue that since this acknowledgment of paternity by Edward D. Stern in his will is sufficient to permit the decedent to inherit from his putative father, it should also be sufficient to permit the putative father or his heirs to inherit from the decedent. They maintain that unless G.S. 29-19 is interpreted so as to permit the paternal heirs to share in the decedent's estate, the resulting distribution will be in violation of the Equal Protection Clause of the Fourteenth Amendment.

In essence, the appellants contend that G.S. 29-19(c) must be judicially amended to include subsection (d) of that statute in order for the statute to pass constitutional muster. We do not agree. G.S. 29-19(c) clearly and unambiguously provides that a putative father and his kindred are only entitled to inherit from an illegitimate child if paternity has been established by one of the methods prescribed in G.S. 29-19(b). Edward D. Stern's paternity was not established by either method; therefore, his heirs are not entitled to inherit from the decedent. It is well settled that "[w]here the language of a statute is clear and unambiguous, there is no room for judicial construction and the courts must give it its plain and definite meaning, and are without power to interpolate, or superimpose, provisions and limitations not contained therein." *See* 12 Strong's N.C. Index 3d, *Statutes* § 5.5 (1978). G.S. 29-19(d) is equally clear in its meaning and applies only when the child is taking under a will from the putative father and

not when the putative father or his heirs are attempting to inherit from the child under the intestacy statutes.

[2] Nor do we agree that G.S. 29-19 as applied to this case runs afoul of the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution. While the statute does classify the illegitimate's mother (and her heirs) and the putative father (and his heirs) differently by placing the additional requirement on the father to establish his paternity by one of the statutorily prescribed methods before he is permitted to inherit, this classification is substantially related to permissible state interests.

The United States Supreme Court has made it clear that when considering statutes based on illegitimacy, courts are to apply an intermediate level of review which requires that the statute be substantially related to permissible state interests. *See Trimble v. Gordon,* 430 U.S. 762, 97 S.Ct. 1459, 52 L.Ed. 2d 31 (1977); *Lalli v. Lalli,* 439 U.S. 259, 99 S.Ct. 518, 58 L.Ed. 2d 503 (1978). Though the classification in the present case differs from those in *Trimble, supra,* and *Lalli, supra,* in that it is not a classification of an individual on the basis of his or her legitimacy, but is a classification of the parents of an illegitimate; nevertheless, we shall apply the intermediate standard of review rather than the lower standard of review because it is at least arguable that the classification here is one "based on illegitimacy." Even applying this more stringent standard, we find that G.S. 29-19 meets the requirements of the Equal Protection Clause.

The North Carolina Supreme Court has previously considered the constitutionality of G.S. 29-19 in the case of *Mitchell v. Freuler,* 297 N.C. 206, 254 S.E. 2d 762 (1979). In *Mitchell, supra,* the Court held that G.S. 29-19 and the statutes *in pari materia* do not violate the Equal Protection and Due Process Clauses of the United States Constitution, since those statutes are substantially related to the permissible state interests they are intended to promote. The Court identified the state's interests as being the following: (1) to mitigate the hardships created by our former law which permitted illegitimates to inherit only from the mother and from each other; (2) to equalize insofar as practical the inheritance rights of legitimate and illegitimate children; and (3) at the same

time, to safeguard the just and orderly disposition of a decedent's property and the dependability of titles passing under intestate laws. *Id.* at 216.

Although *Mitchell, supra,* is distinguishable from the present case in that it concerns the inheritance rights of an illegitimate rather than the inheritance rights of the parents of an illegitimate, the statute and the state interests involved are the same. Not only does the classification here foster the same state interests recognized in *Mitchell, supra,* it imposes a much lighter burden on the one allegedly discriminated against. Unlike the illegitimate who can do nothing to establish his right to inherit from his father, the father of an illegitimate has the ability to insure that he will be an intestate taker—he simply has to acknowledge his child in the prescribed manner. Unlike the illegitimate, the father can preserve his rights and he should not be rewarded for his failure to do so.

We conclude that the requirement imposed on the father of an illegitimate who would inherit from his illegitimate child is substantially related to the important state interests G.S. 29-19 is intended to promote. For this reason, we find no violation of the Equal Protection Clause.

Affirmed.

Chief Judge VAUGHN concurs.

Judge JOHNSON dissents.

Judge JOHNSON dissenting.

The central issue presented by this appeal is not the facial constitutionality of this state's intestate succession laws governing the inheritance rights of illegitimate children and their heirs. Rather, the issue is one of statutory interpretation and application, for it is well established that a statute which is fair and impartial on its face may be unconstitutional in its application in a particular instance if it is administered so as to result in unjust and illegal discrimination between persons similarly situated. *Yick Wo v. Hopkins,* 118 U.S. 356, 30 L.Ed. 220, 6 S.Ct. 1064 (1886); *Bazemore v. Board of Elections,* 254 N.C. 398, 119 S.E. 2d

In re Estate of Stern v. Stern

637 (1961); *In re Truesdell,* 63 N.C. App. 258, 304 S.E. 2d 793 (1983). In my opinion, the majority's failure to recognize the steps taken by the decedent's father to acknowledge his paternity of the decedent as constituting substantial or constructive compliance with the requirements of G.S. 29-19(b)(2) works a palpable injustice in this case, is erroneous as a matter of statutory construction, and violates the constitutional right to equal protection under the law of the paternal heirs of the decedent.

I

Factually, a more compelling case for recognition of the doctrine of constructive or substantial compliance with the statutory requirement for proof of paternity would be hard to imagine. There is absolutely no doubt that Edward D. Stern is the natural or biological father of the decedent, Edward Gordon Stern (hereafter Gordon Stern). The Certificate of Registration of Birth indicates that Gordon Stern was born to Hilda Weiss on 25 March 1927. At that time, Hilda Weiss listed her address as 2121 Lindsay Street, Regina. According to an affidavit submitted by John and Lea Ermel, neighbors and close family friends of Edward D. Stern and Hilda Weiss, Gordon's father and mother lived together at 2121 Lindsay Street until shortly before Hilda Weiss' death when Gordon was six years old. Although Mrs. Ermel always thought the couple were legally married, Mr. Ermel knew that they were not.

> I . . . knew Edward D. Stern and Hilda Weiss were not legally married. However, Edward D. Stern always said to people that he was married. I remember Hilda telling me they wanted to cross the line to get married because they would not marry them in Regina for the fact that Edward D. Stern was Jewish and she, Hilda Weiss, was Catholic.

After Hilda Weiss' death, Edward D. Stern continued to live with his son Gordon at the family home in Regina.

In 1942, Gordon ran away from home and joined the Canadian Armed Services. After Gordon's return, he and his father had a falling out, and eventually Gordon moved to Norfolk, Virginia and went to work with his father's relatives. Apparently by the early 1960's, Gordon and his father had reconciled their differences. In 1964, Gordon obtained an order changing his name from

---

In re Estate of Stern v. Stern

---

Weiss to Stern in the United States. Throughout the 1960's and 1970's, Gordon visited his father regularly and tended to his father's estate and business affairs.

All of Gordon Stern's health and school records indicate that Edward D. Stern was Gordon Stern's father. Edward D. Stern's solicitor, James Griffin, stated in his affidavit that in conversation, Edward D. Stern never mentioned Hilda Weiss, but always referred to Gordon as his son. Further, that upon inquiry, Griffin advised the father to have Gordon officially change his last name in Canada from Weiss to Stern so as to facilitate identification of Gordon as his son in Edward's will.

> I have no doubt whatsoever that the description of Gordon E. [sic] Stern as "my son" in his will is what Edward D. Stern had intended and he believed he had made every necessary arrangement to have Gordon properly described in order to enable him to share in his estate.

The record also contains the affidavit of Josephine Eure, who lived with Gordon Stern as his common-law wife for the last 11 years of his life. Ms. Eure stated that Gordon Stern and his father, Edward D. Stern, considered themselves to be father and son in every respect and maintained several joint bank accounts with rights of survivorship. After Edward D. Stern's death in 1979, Gordon inherited approximately $500,000 from his father, thereby increasing his net worth from approximately $100,000 to $600,000. In addition, Ms. Eure stated that Gordon Stern maintained a very close relationship with his father's brothers and sisters and their children, but only heard infrequently from his mother's brothers and sisters and, in fact, had not even met some of them.

The foregoing evidence demonstrates that the parents of Gordon Stern were apparently prevented from marrying one another because of religious intolerance in the 1920's. Within a few years of Gordon's birth, his mother passed away. Edward D. Stern had always acknowledged that he was Gordon's father and provided for Gordon's needs while he was growing up. When Gordon moved to Virginia, his father's relatives provided him with employment. Through the years, Gordon maintained a close relationship with his father and his father's brothers and sisters, but had little or no contact with his mother's relatives.

In re Estate of Stern v. Stern

Edward D. Stern, was, at all relevant times, a citizen and resident of Regina, in the province of Saskatchewan, Canada. Edward D. Stern, in his duly probated last will acknowledged himself to be the father of Gordon Stern and believed that he had thereby done all that was necessary to ensure that Gordon inherit the residue of his estate. Just one year prior to Gordon's death, he inherited the vast bulk of his estate from his father by that same will.

The issue presented by the foregoing factual summary is whether Edward D. Stern's lineal and collateral kin shall be completely precluded from inheriting from his acknowledged son, Gordon Stern under the North Carolina intestate succession statutes by virtue of the fact that Edward D. Stern failed to acknowledge his paternity by the precise method stated in G.S. 29-19(b)(2). More particularly, the issue of statutory construction is whether a father's acknowledgment of paternity in his duly probated last will is the substantial equivalent of an *inter vivos* acknowledgment of paternity in a written instrument executed or acknowledged before a certifying officer named in G.S. 52-10(b)[1] and filed during the lives of the father and child in the office of the clerk of superior court of the county where either resided. G.S. 29-19(b)(2).

II

The cases arising under G.S. 29-19 have thus far concerned the right of the illegitimate child to inherit from his or her putative father. The issue presented as to the inheritance rights of the paternal heirs in the intestate illegitimate child's estate is one of first impression under our intestate succession statutes. However, general principles of statutory construction and constitutional law are readily applicable to the case under discussion.

Prior to the enactment of G.S. 29-19, children born out of wedlock who were not legitimated, either through marriage of their parents or legitimation proceedings, could not inherit from

---

1. G.S. 52-10(b) (Cum. Supp. 1983) provides, in pertinent part, as follows:

Such certifying officer shall be a notary public, or a justice, judge, magistrate, clerk, assistant clerk or deputy clerk of the General Court of Justice, or the equivalent or corresponding officers of the state, territory or foreign country where the acknowledgment is made.

their fathers. *See Jolly v. Queen,* 264 N.C. 711, 142 S.E. 2d 592 (1965); *In re Lucas v. Jarrett,* 55 N.C. App. 185, 284 S.E. 2d 711 (1981). In *Mitchell v. Freuler,* 297 N.C. 206, 254 S.E. 2d 762 (1979), the North Carolina Supreme Court expressly stated that one of the purposes in enacting G.S. 29-19 was the "mitigat[ion of] hardships created by former law (which permitted illegitimates to inherit only from the mother and from each other)." Therefore, G.S. 29-19 is to be considered a remedial statute.

It is well established that a remedial statute must be liberally construed as a whole in the light of the evils sought to be eliminated, the remedies intended to be applied, and the objective to be attained. *Puckett v. Sellars,* 235 N.C. 264, 69 S.E. 2d 497 (1952); *Young v. Whitehall Co.,* 229 N.C. 360, 49 S.E. 2d 797 (1948). Furthermore, a construction will not be adopted that results in palpable injustice when the language of the statute is susceptible to another reasonable construction which is just and is consonant with the purpose and intent of the act. *Puckett v. Sellars, supra.*

In addition to the mitigation of former hardships visited upon illegitimate children and their families, the purposes of G.S. 29-19 are (1) to equalize insofar as practical the inheritance rights of legitimate and illegitimate children and (2) at the same time, to safeguard the just and orderly disposition of a decedent's property and the dependability of titles passing under the intestacy laws. *Mitchell v. Freuler, supra.* Obviously, the recognition of the acknowledgment of Edward D. Stern's paternity in his last will as constituting constructive compliance with the requirements of G.S. 29-19(b)(2) would further the remedial purposes of the statute and attain the objective of equalization of the inheritance rights of legitimate and illegitimate children and their heirs. The question then becomes whether recognition of Edward D. Stern's testamentary acknowledgment of paternity would undermine the state's interest in the orderly disposition of his illegitimate son's estate. I am firmly of the opinion that it would not. Edward D. Stern's testamentary acknowledgment can easily and properly be deemed to constitute constructive compliance with the requirements of G.S. 29-19 so as to establish the inheritance rights of his brothers and sisters in Gordon Stern's estate.

This Court has already recognized the applicability of the doctrine of constructive compliance to the provisions of G.S.

29-19(b)(2) in *Herndon v. Robinson*, 55 N.C. App. 318, 291 S.E. 2d 305, *appeal dismissed and cert. denied*, 306 N.C. 557, 294 S.E. 2d 223 (1982). In *Herndon*, the plaintiff illegitimate child offered various written documents to prove that his father had acknowledged paternity and argued that these documents supported constructed compliance with the mandate of G.S. 29-19(b)(2). The documents offered were a life insurance policy insuring the life of the plaintiff, showing the decedent as the father and beneficiary of the policy; a census report showing plaintiff living in the decedent's household as "son"; and an employment application submitted by the decedent that listed the plaintiff as his son. Judge, now Justice, Harry C. Martin, writing for the court, implicitly accepted the argument that strict compliance with G.S. 29-19(b)(2) would not be required in every case, but rejected the sufficiency of the documents tendered to establish constructive compliance, reasoning that none of the writings admitted of "a conscious intent to establish paternity for the purposes of intestate succession."

> The formalities of N.C.G.S. 29-19(b)(2) . . . serve a dual purpose. As a method for establishing paternity, a written instrument acknowledging paternity, executed and filed with the clerk of superior court, assures the requisite degree of certainty. The formalities further assure that the decedent intended that the illegitimate child share in his estate, much the same way that a father intentionally excludes legitimate children as beneficiaries under his will. But, just as a father must act to *exclude* a legitimate child from sharing in his estate, he must also act to *include* an illegitimate child. (Emphasis original.)

57 N.C. App. at 321, 291 S.E. 2d at 307.

In this case, Edward D. Stern did act to include his illegitimate child in his estate. His duly probated last will admits of Edward D. Stern's conscious intent to establish paternity so that Gordon could take under that will. The will instrument itself also assures the requisite degree of certainty as a method for establishing paternity necessary for the orderly and just disposition of an estate under the intestate succession statutes. There is simply no reason to refuse to accept Edward D. Stern's demonstration of a testamentary intent to establish paternity for the purpose of

also establishing paternal inheritance rights under the intestate succession laws. Furthermore, the formalities for executing a valid last will are far more rigorous than those required by G.S. 29-19(b)(2) and once the will has been duly admitted to probate, the purpose behind the filing requirements of subsection (b)(2) has also been served. That purpose is clearly to safeguard the dependability of titles passing under the intestate succession laws.

It is thus evident that recognition of the acknowledgment of paternity contained in a duly probated last will as the substantial equivalent of the statutory *inter vivos* acknowledgment of paternity required by G.S. 29-19(b)(2) threatens absolutely no aspect of the just and orderly disposition of Gordon Stern's estate. On the contrary, the failure to recognize the fact of Edward D. Stern's acknowledged paternity of Gordon so as to establish intestate succession rights in the paternal heirs results in the patently unjust distribution of Gordon Stern's estate. The bulk (nearly 85%) of this estate had just been inherited by Gordon from Edward D. Stern one year prior to Gordon's own death. Disallowance of the right of Edward D. Stern's brothers and sisters and their children to share in Gordon Stern's estate has the practical effect of shifting what was in large part the inheritance of a Stern family estate entirely to the maternal Weiss heirs with whom Gordon had little or no contact. In a case such as this, where there is no doubt as to paternity, where both the father and the father's relatives provided for the needs of the child as he was growing up, and no interest of the state would be adversely affected by a liberal construction of this remedial statute, the requirement of strict compliance works a palpable injustice and is indefensible as a matter of statutory construction.

In addition, the majority errs in concluding that subsection (d) of G.S. 29-19 applies *only* when the illegitimate child is seeking to inherit under the will of the putative father. G.S. 29-19 governs intestate succession by, through and from illegitimate children. By its terms, subsection (d) applies to those cases in which the father died *testate,* acknowledged his paternity of the illegitimate child in his duly probated last will and provided, expressly or by class devise, for the child therein. According to the majority's construction, the provision would serve no purpose other than the restatement of the obvious: the natural father of an illegitimate

child can acknowledge paternity in his last will and provide for the child therein.

More importantly, such a construction fails to account for the fact that the provision is contained at all in an *intestate succession statute*. Because of the context in which it appears, it is not reasonable to assume that subsection (d) is limited in applicability to determining only the right of an illegitimate child to inherit for a *testate* natural father under that father's will. Rather, the legislature must have included the provision in the intestacy statutes to serve a purpose which is related to the intestate inheritance rights of illegitimate children, their natural fathers and the lineal and collateral heirs of both.

Admittedly, the bare inclusion of subsection (d) in the statutory scheme of intestate succession, with no indication as to why it so appears or how it is to relate to subsections (b) or (c), renders the scheme ambiguous. However, in order to further the remedial purposes of the statute, the ambiguity should be resolved so as to equalize the inheritance rights of legitimate and illegitimate children and their heirs. Such a result would be achieved by construing subsection (d) to establish yet another method by which the illegitimate child could establish the unmarried father's paternity and therefore inherit by intestate succession by, through and from his father and paternal heirs and the paternal heirs, in turn, could establish their right to inherit by, through and from the illegitimate intestate child who was fathered by one of their blood relations.

### III

Another significant concern raised by the majority's requirement of strict compliance with the evidentiary paternity procedure described in G.S. 29-19(b)(2) is the constitutionality of such a construction and application of the statute with regard to the inheritance rights of the paternal heirs of the illegitimate child. In *Mitchell v. Freuler, supra,* the statutory scheme *as written* was upheld against the illegitimate child's constitutional challenges on the basis of the United States Supreme Court's decision in *Lalli v. Lalli,* 439 U.S. 259, 58 L.Ed. 2d 503, 99 S.Ct. 518 (1978). A significant factor in the *Lalli* opinion which declared a New York statute governing the intestate succession rights of illegitimate

children constitutional was the *liberal interpretation* given the statute by the New York courts.

The *Lalli* court looked specifically to the reach and effect of the statute *as applied* and cited with approval a number of cases in which the New York courts accepted constructive or substantial compliance with the statute so as to avoid "unnecessary injustice" and inequality.

> The New York courts have interpreted § 4-1.2 liberally and in such a way as to enhance its utility to both father and child without sacrificing its strength as a procedural prophylactic . . . In addition, the courts have excused "technical" failures by illegitimate children to comply with the statute in order to prevent unnecessary injustice. (Citations omitted.)

439 U.S. at 273-274. This aspect of the *Lalli* opinion indicates that judicial treatment of remedial statutes aimed at mitigating the hardships endured by illegitimates and their heirs is an important component of equal protection analysis. By implication, a requirement of strict compliance with the purely evidentiary requirement of G.S. 29-19(b)(2) in a case such as this where equally reliable evidence of paternity has been produced and the possibility of delay and uncertainty in estate administration minimized, would take the reach of the statute "far in excess of its justifiable purposes," 439 U.S. at 273, and render the statute violative of the Equal Protection Clause as applied to the paternal heirs of this decedent. *See also* Note, 16 Wake Forest L. Rev. 205 (1980) (judicial impairment of the illegitimate child's paternal inheritance rights can be minimized in both statutory and constitutional respects by recognition of constructive compliance with the evidentiary requirements of G.S. 29-19).

The *Lalli* court's evidence concern that intestate succession statutes not *unnecessarily* exclude those categories of illegitimate children whose inheritance rights can be recognized without jeopardizing the orderly settlement of estates or the dependability of titles passing under the intestacy laws also led to the reversal of the Illinois Supreme Court's upholding of the intestacy statute challenged in *Trimble v. Gordon,* 430 U.S. 762, 52 L.Ed. 2d 31, 97 S.Ct. 1459 (1977). The Court made the following relevant observa-

tion on the proper balancing of the interests at stake in these cases:

> We think, however, that the Illinois Supreme Court gave inadequate consideration to the relation between § 12 and the State's proper objective of assuring accuracy and efficiency in the disposition of property at death. *The court failed to consider the possibility of a middle ground between the extremes of complete exclusion and case-by-case determination of paternity.* (Emphasis added.)

430 U.S. at 770-771. The Illinois statute was found to set up an impenetrable barrier that worked to shield otherwise invidious discrimination and, in its stringent requirements, the statute was not "carefully attuned to alternative considerations."

Here, the paternal heirs of an intestate illegitimate child constitute a category of persons who are classified *both* on the basis of illegitimacy and on the basis of gender.[2] In those cases where the unmarried father acknowledged paternity in a formal testamentary instrument, the accurate and efficient identification of the father and paternal heirs for purposes of intestate succession poses no greater difficulty for the state courts than does identification of the mother and maternal heirs. Therefore, the paternal heirs' rights to inherit from the intestate illegitimate child can be recognized under G.S. 29-19(c) where the putative father has so acknowledged his paternity of the illegitimate child, without jeopardizing *any* of the state's interests in evidentiary accuracy and administrative efficiency. To completely exclude this category of natural heirs of the illegitimate child from intestate distribution on the basis of an ideal of administrative efficiency, without any consideration of the possibility of accurate and reliable proof of paternity produced in any manner other than those listed in G.S. 29-19(b)(1) or (2) is unnecessary, is not structured to fur-

---

2. In recent years the constitutional rights of unmarried fathers in the areas of child custody and adoption have been greatly expanded. *See, e.g., Stanley v. Illinois*, 405 U.S. 645, 31 L.Ed. 2d 551, 92 S.Ct. 1208 (1972) and *Caban v. Mohammed*, 441 U.S. 380, 60 L.Ed. 2d 297, 99 S.Ct. 1760 (1979). Gender-based distinctions must serve governmental objectives and must be substantially related to the achievement of those objectives in order to withstand judicial scrutiny under the Equal Protection Clause. *Craig v. Boren*, 429 U.S. 190, 50 L.Ed. 2d 397, 97 S.Ct. 451 (1976). Accordingly, any distinction between unmarried mothers and unmarried fathers must be structured reasonably to further these ends.

ther any permissible state objective and results in an unconstitutional denial of the paternal heirs' rights to equal protection under the law.

For the foregoing reasons, I would reverse the trial court's ruling and allow paternal heirs to share in the intestate distribution of the estate of Gordon Stern.