IN RE: THE MATTER OF ARDIES WILLIAMS, Deceased

No. COA10-325

(Filed 16 November 2010)

**Wills— intestate succession—legitimation—statutory requirements**

The trial court did not err in affirming the clerk of court's order determining that neither petitioner was a legitimate heir to decedent's estate. Although the evidence tended to show that decedent informally acknowledged paternity of both petitioners, that acknowledgment did not fulfill the statutory requirements for legitimation under N.C.G.S. § 29-19(b)(1). Petitioners failed to show compliance with any of the four forms of legitimation necessary for illegitimate children to inherit from or through their putative fathers.

Appeal by petitioners from an order entered 2 November 2009 by Judge Henry W. Hight, Jr. in Wake County Superior Court. Heard in the Court of Appeals 30 September 2010.

*David Roy Blackwell, for petitioners-appellants.*

*Ellis & Winters LLP, by Matthew W. Sawchak and Chad T. Diamond, for respondent-appellee.*

JACKSON, Judge.

Nancy Adams Watkins ("Watkins") and Brenda Adams Howard ("Howard") (collectively "petitioners") appeal the superior court's 2 November 2009 order affirming the 20 July 2009 order of the Clerk of Court that neither woman is a legitimate heir to the estate of Ardies Williams ("Williams"). For the reasons stated herein, we affirm.

On 24 May 2006, Williams died intestate. On 7 June 2006, Williams's wife, Audrey Williams ("Audrey"), applied for letters of administration and asserted that she was the only "person[] entitled to share in the decedent's estate." On 7 August 2006, Watkins, Howard, and Orlando Ardies Williams ("Orlando") filed "Objections to Filings By the Administrator[,]" contesting numerous statements made in Audrey's application, including her assertion that she alone was entitled to share in Williams's estate. The objections alleged, *inter alia*, that Williams was "survived by three children: Nancy Adams Watkins (daughter, age 55), . . . Brenda Adams Howard

**IN RE WILLIAMS**

[208 N.C. App. 148 (2010)]

(daughter, age 53), . . . and Orlando Ardies Williams (son, age 35) . . . . Each child of Ardies Williams visited him at his home prior to his death while Audrey Williams, the second wife of Ardies Williams, was present."

On 23 October 2006, a hearing was held before the Clerk of Court as to the issue of paternity or legitimacy for Watkins, Howard, and Orlando. Petitioners introduced as evidence a 17 November 1961 arrest warrant charging Williams with criminal non-support for Watkins and Howard. They also introduced eight receipts from the Domestic Relations Court for payments made to that court from Williams, which were payable to Portia Adams, petitioners' mother. In addition, petitioners produced a power-of-attorney signed by Williams that named Watkins as his attorney-in-fact and evidence of an insurance policy, also signed by Williams, that labeled Watkins as his daughter and named her as a beneficiary. Following the hearing, petitioners introduced an affidavit of former Superior Court Judge Robert L. Farmer ("Farmer"), who had been employed as solicitor of the Raleigh and Wake County Domestic Relations Court from 1 January 1963 until 2 June 1965. According to Farmer's affidavit, a finding that a defendant was the parent of the child at issue would have been necessary to a conviction for criminal non-support. Furthermore, Farmer asserted,

> To my knowledge, the Domestic Relations Court of Raleigh and Wake County would not accept the payments evidenced by the receipts noted above, unless a defendant was under a court order to pay such sums, including a judgment entered following a conviction for nonsupport of an illegitimate child in violation of G.S. 49-2.

The proceedings for Williams's estate were stayed on or about 3 November 2006, "pending discovery and submission of additional information on the question of paternity or legitimacy of the three alleged children of Ardies Williams[.]" On 20 July 2009, the Clerk of Court issued an order, finding and concluding, *inter alia*, that

> 1. The birth certificate for [Watkins] names Ardies Williams as her father, names Portia Adams as her mother and indicates that [Watkins] was born illegitimate.

> 2. The birth certificate for [Howard] omits the father's identity, names Portia Adams as her mother and indicates her mother was not married at the time of her birth[;] thus [Howard] was also born illegitimate.

**IN RE WILLIAMS**

[208 N.C. App. 148 (2010)]

3. There is no record of a marriage between Ardies Williams and Portia Adams which would legitimate [Watkins] and [Howard].

4. There are records from June 1956 and November 1961 regarding proceedings before the Domestic Relations Court for Wake County against Ardies Williams regarding his willful neglect and refusal to support and maintain his (2) minor illegitimate children, [Watkins] and [Howard]. These records include receipts for child support payments made by Ardies Williams to the Domestic Relations Court for the months March through August 1962. No other records from proceedings before the Domestic Relations Court regarding these persons have been produced by any party to this matter. There is no judicial decree in any of the records from the Domestic Relations Court that Ardies Williams is the father of [Watkins] and [Howard].

5. On or about April 8, 1992, Ardies Williams executed an Acknowledgment of Paternity on behalf of [Watkins] and [Howard]; said statement was made before a notary public[;] however, no party to this matter has produced evidence that this statement was filed during the lifetime of Ardies Williams with the clerk of superior court where he or either of his alleged daughters resided.

6. Based upon the records filed by the parties to this matter, the [c]ourt concludes that the paternity of Ardies Williams for [Watkins] and for [Howard] was not judicially determined by the Domestic Relations Court.

7. Based upon the records filed by the parties to the matter, the [c]ourt concludes that Ardies Williams did not legitimate [Watkins] or [Howard] during his lifetime.

8. This [c]ourt finds that neither [Watkins] [n]or [Howard] [is] entitled to inherit from the estate of Ardies Williams.

On 30 July 2009, petitioners appealed the Clerk's order to the superior court.[1] The superior court affirmed the order on 2 November 2009. Petitioners now appeal the 2 November 2009 order.

Petitioners' sole argument is that the superior court erred by failing to find that they are the daughters of Williams and, therefore, his lawful heirs. We disagree.

---

1. The 20 July 2009 order from the Clerk of Court determined that Orlando was a legitimate son and heir of Williams, based upon the documented marriage between Williams and Orlando's mother. Therefore, Orlando did not appeal that order.

North Carolina General Statutes, section 1-301.3 governs "matters arising in the administration . . . of estates of decedents[.]" N.C. Gen. Stat. § 1-301.3(a) (2005). According to that section, the superior court reviews an order from the clerk to determine "(1) [w]hether the findings of fact are supported by the evidence[,] (2) [w]hether the conclusions of law are supported by the findings of facts[,] [and] (3) [w]hether the order or judgment is consistent with the conclusions of law and applicable law." N.C. Gen. Stat. § 1-301.3(d) (2005). Our review is the same as that of the superior court.[2] *In re Estate of Pate*, 119 N.C. App. 400, 403, 459 S.E.2d 1, 2-3 (citation omitted), *disc. rev. denied*, 341 N.C. 649, 462 S.E.2d 515 (1995).

We previously have held that

> [a]bsent a statute to the contrary, illegitimate children have no right to inherit from their putative fathers. There are several ways to legitimate children in North Carolina:
>
> 1) verified petition filed with the superior court by the putative father, 2) subsequent marriage of the parents, or 3) civil action to establish paternity. Illegitimate children may inherit from their putative fathers if they have been legitimated by one of the above or if paternity has been established in an action for criminal non-support.

*Helms v. Young-Woodard*, 104 N.C. App. 746, 749-50, 411 S.E.2d 184, 185 (1991) (internal citations omitted), *disc. rev. denied*, 331 N.C. 117, 414 S.E.2d 756 (1992). *See also* N.C. Gen. Stat. §§ 49-10 through -14 (2005).

North Carolina General Statutes, section 29-19(b) provides:

> For purposes of intestate succession, an illegitimate child shall be entitled to take by, through and from:
>
> (1) Any person who has been *finally* adjudged to be the father of such child pursuant to the provisions of G.S. 49-1 through 49-9 or the provisions of G.S. 49-14 through 49-16;

---

2. We note that petitioners did not include a standard of review in their brief to this Court, in violation of Rule 28(b)(4) of our Rules of Appellate Procedure. Similarly, petitioners' brief is single-spaced, also in violation of our Rules. *See* N.C.R. App. P. 28(j)(2)(A) (2009). Because these violations did not hamper our review of the matters before us, we do not issue sanctions against petitioners. Nonetheless, we caution future appellants to conform the format and substance of their briefs to our Rules.

(2) Any person who has acknowledged himself during his own lifetime and the child's lifetime to be the father of such child in a written instrument executed or acknowledged before a certifying officer named in G.S. 52-10(b) and filed during his own lifetime and the child's lifetime in the office of the clerk of superior court of the county where either he or the child resides.

N.C. Gen. Stat. § 29-19(b) (2005) (emphasis added). We note that, in 1977, the General Assembly substituted the phrase "finally adjudged" for "judicially determined" in subsection (b)(1) and that such language was effective to estates of decedents dying on or after 1 September 1977. 1977 N.C. Sess. Laws 757 § 3.

An illegitimate child's right to inherit from her putative father is established only via strict compliance with one of the statutory methods of legitimation. *See Hayes v. Dixon*, 83 N.C. App. 52, 54-55, 348 S.E.2d 609, 610 (1986), *disc. rev. denied*, 319 N.C. 224, 353 S.E.2d 402, *cert. denied*, 484 U.S. 824, 98 L. Ed. 2d 50 (1987). Furthermore, we have held that a putative father's acknowledgment of paternity before a notary public and execution of an "Affidavit Of Parentage For Child Born Out Of Wedlock" did not comply with the statutory provisions when such acknowledgment was never filed. *In re Estate of Morris*, 123 N.C. App. 264, 266-67, 472 S.E.2d 786, 787 (1996).

In the case *sub judice*, petitioners contend that "the arrest warrant charging Ardies Williams with the nonsupport of his illegitimate children [Watkins] and [Howard] and the subsequent receipts showing payments [through] the court to [petitioners' mother] indicate that paternity was judicially established as required by law." (Original in all caps). Of the four legitimation methods available in North Carolina—a verified petition filed with the court, the marriage of the mother and putative father, a civil action to establish paternity, or an action for criminal non-support—*see Helms, supra*, petitioners address only the fourth option in their brief. Although the evidence tends to show that Williams informally acknowledged paternity of both Watkins and Howard, that acknowledgment does not fulfill the statutory requirements for legitimation.

Petitioners, in an effort to prove that Watkins and Howard had been legitimated via an action for criminal non-support, presented three pieces of indirect evidence: (1) a 17 November 1961 arrest warrant for Williams, which alleged criminal non-support of the two minor children, Watkins and Howard; (2) eight receipts from the

Domestic Relations Court for payments Williams made to the court between March and August 1962, all of which were payable to petitioners' mother; and (3) Farmer's affidavit, which indicated that, to his knowledge, the Domestic Relations Court would not have accepted payments in the absence of a court order requiring those payments. From this, petitioners attempt to draw the inference that, in late 1961 or early 1962, Williams had been found guilty of criminal non-support of Watkins and Howard, which necessarily would have required a finding of Williams's paternity. Whether or not this inference is reasonable, our statutes mandate that paternity be *finally* adjudicated in order for an illegitimate child to inherit from or through her father. *See* N.C. Gen. Stat. § 29-19(b)(1). Considering that our legislature specifically changed the language of North Carolina General Statutes, section 29-19(b)(1) to require a *final* judgment, *see* 1997 N.C. Sess. Laws 757 § 3, it is clear that circumstantial evidence and inferences cannot satisfy the statutory mandate for legitimation.

Petitioners did not present the Clerk of Court with a judicial decree establishing Williams's paternity, and therefore, the Clerk did not err in finding that petitioners had failed to show compliance with any of the four forms of legitimation necessary for illegitimate children to inherit from or through their putative fathers. Accordingly, the lack of evidence demonstrating a final judgment as to Williams's paternity necessitated the Clerk of Court's conclusion that neither Watkins nor Howard can inherit from Williams's estate.

For the foregoing reasons, we affirm the superior court's order affirming the Clerk of Court's determination that neither Watkins nor Howard properly was legitimated by Williams.

Affirmed.

Judges ELMORE and THIGPEN concur.