HUNTER, JR., ROBERT N., Judge.
 

 *77
 
 Kamari Krider ("Krider"), appeals from an order holding he was not an heir to his putative father's estate. On appeal, Krider argues La-Reko Williams ("Williams") substantially complied with North Carolina's legitimization requirements and challenges the constitutionality of the legitimization statute as applied. After review, we uphold the trial court's order.
 

 I. Factual and Procedural History
 

 Williams died intestate on 20 July 2011. Victor Williams and Temako McCarthy, the biological parents of Williams, served as administrators of Williams' estate. The Letters of Administration for said administrators were filed on 25 August 2011. On 23 July 2014, Khadaijah Chardonnay Krider, natural mother of Krider, filed verified motions in the cause alleging that Krider was the sole heir to Williams's estate as Williams was Krider's natural father. Attached to the verified motions were Krider's birth certificate and an Affidavit of Parentage for Child Born Out of Wedlock. Krider proffered both documents as evidence that he was the sole heir of Williams under N.C. Gen. Stat § 29-15(1). Krider requested relief in the form of a temporary restraining order and preliminary injunction freezing the assets of Williams's estate and recovering all Williams's assets possessed by outside parties and placing them with the Clerk of Superior Court pending a hearing of whether Krider was the sole heir. Krider additionally requested relief in the form of a preliminary injunction demanding the Clerk of Superior Court place all property of Williams's estate in a trust for the benefit of Krider.
 

 On 23 July 2014, the administrators of Williams's estate filed an answer to Krider's verified motions in the cause. The answer denied Williams was Krider's natural father and denied that Krider was a beneficiary of Williams's estate under N.C. Gen.Stat. § 29-15(1).
 

 *78
 
 On 12 August 2014, the Clerk of Superior Court conducted a hearing on Krider's motions. On 23 September 2014, the Clerk entered an order providing the following findings of fact:
 

 1. The minor child Kamari Antonious Krider was born out of wedlock.
 

 2. The putative father La-Reko A. Williams had not legitimated the child pursuant to the provisions of G.S. 49-1 through 49-9 or the provision of G.S. 49-14 through 49-16. G.S. 29-19(b)(1).
 

 3. The putative father La-Reko A. Williams also did not comply with N.C.G.S. 29-19 by filing an appropriate written acknowledgment of paternity with the Clerk of Superior Court during his and the child's lifetimes.
 

 4. No DNA testing for paternity has ever been performed.
 

 *256
 
 5. An Affidavit of Parentage for Child Born Out of Wedlock appears to have been signed at the hospital by La-Reko Antonious Williams ...
 

 6. Attorneys for the minor child made no argument for legitimation pursuant to the statute- G.S. 29-19 -rather a U.S. Constitution, 14th Amendment, equal protection argument was made asserting that the State statute was unconstitutional in that equal protection was denied to illegitimate children.
 

 As a result of the findings of fact, the Clerk of Superior Court made the following conclusions of law:
 

 1. The minor child, Kamari A. Krider, has not been legitimated pursuant to the laws of this State.
 

 2. The State has a substantial and important interest for the just and orderly disposition of property at death.
 

 3. This State's statutory requirements do not violate the Equal Protection or Due Process Clauses of the U.S. Constitution.
 
 Estate of Stern v. Stern,
 

 66 N.C.App. 507
 
 ,
 
 311 S.E.2d 909
 
 (1984), appeal dismissed,
 
 471 U.S. 1011
 
 ,
 
 105 S.Ct. 2010
 
 ,
 
 85 L.Ed.2d 294
 
 (1985).
 

 Based on the findings of fact and conclusions of law, the court held that Krider was not an heir of Williams's estate. Krider appealed to Mecklenburg County Superior Court and filed a motion for a temporary
 
 *79
 
 restraining order and preliminary injunction on 3 October 2014. He alleged facts that tended to show the following: Krider was born on 22 April 2011. Witness testimony, a certificate of live birth, and a signed Affidavit of Parentage by Williams were presented as evidence during the heir determination hearing. Krider contended this evidence proved he is the natural son and sole legal heir of Williams. Additionally, Krider argued at the heir determination hearing that he was denied due process and equal protection of the laws because he could not inherit from Williams due to his illegitimate status.
 

 Following the facts alleged, Krider requested the following relief: a temporary restraining order and preliminary injunction freezing all funds/property/accounts held in the name of or on behalf of Williams's estate and a Superior Court trial to reexamine the Clerk's 23 September 2014 order.
 

 The administrators of Williams's estate filed a reply on 30 October 2014. They requested dismissal with prejudice. The parties were heard on 17 December 2014 and 19 December 2014. The trial court filed an order on 2 January 2015. The trial court made the following findings:
 

 1. The applicable statute as to whether the minor child Krider is a legitimate heir of La-Reko Williams is N.C. Gen.Stat. § 29-19....
 

 10. That Krider was born April 22, 2011.
 

 11. That La-Reko Antonious Williams died on July 20, 2011.
 

 12. The Court finds that an "Affidavit of Parent for Child Born Out of Wedlock" appears to have been signed by La-Reko Antonious Williams.
 

 13. The Affidavit was not filed with the Clerk of Court.
 

 14. The form Affidavit of Parentage for Child Born out Wedlock explains on the back that "[t]he execution and filing of this Affidavit with the registrar does not affect inheritance rights unless it is also filed with the clerk of the court in the county where the father resides...."
 

 17. That Krider does not meet the requirements for intestate succession set forth in N.C. Gen.Stat. § 29-19(b).
 

 18. The constitutionality of N.C. Gen.Stat. § 29-19 has been previously upheld in
 
 *80
 

 Mitchell v. Freuler,
 

 297 N.C. 206
 
 ,
 
 254 S.E.2d 762
 
 (1979) and
 
 Outlaw v. Planters Nat. Bank & Trust Co.,
 

 41 N.C.App. 571
 
 ,
 
 255 S.E.2d 189
 
 (1979) finding that the Equal Protection and Due Process Clauses of the Constitution are not violated because the statute is substantially related to the permissible state interests the statute was to promote.
 

 19. The
 
 Mitchell
 
 court identified the state's interests as follows: "(1) to mitigate the hardships created by our former law (which permitted illegitimates to inherit only from the mother and from each other); (2) to equalize insofar as practical the inheritance rights of legitimate and illegitimate
 
 *257
 
 children; and (3) at the time to safeguard the just and orderly disposition of a decedent's property and the dependability of titles passing under intestate laws."
 
 Mitchell,
 
 at 216,
 
 254 S.E.2d 762
 
 .
 

 20. The legislature amended N.C. Gen.Stat. § 29-19(b) in 2013 to add a new and additional method to legitimate a child born out of wedlock through the use of a DNA test for a "person who died prior to or within one year after the birth of the child." N.C. Gen.Stat. § 29-19(b)(3) (2013)....
 

 22. N.C. Gen.Stat. § 29-19(b)(3) does not apply to Krider as the provision only applies to estates of persons who died after June 26, 2013.
 

 23. Counsel for Krider argues that N.C. Gen.Stat. N.C. Gen.Stat. § 29-19 is unconstitutional in as much as it denies equal protection to illegitimate children.
 

 24. Krider contends that [ section] 29-19(b)(3) is unconstitutional as applied because it discriminates against illegitimate children with no apparent grounds for doing so and creates a separate class of individuals for whom the statute will not assist with no apparent grounds by excluding persons born prior to June 26, 2013 from utilizing this section of the statute....
 

 27. The Court is aware that the effective date of the statute prevents Krider from using the provisions of N.C. Gen.Stat. § 29-19(b)(3) (2013) and that this creates a harsh result. However, the Court finds this does not create an equal protection or due process violation.
 

 *81
 
 28. The Court accordingly finds that the Clerk's conclusions of law are supported by the findings of fact and that the Order is consistent with the conclusions of law and applicable law.
 

 Based on its findings, the trial court affirmed the Clerk's 23 September 2014 order declaring Krider was not a legal heir of Williams's estate. On 7 Jan 2015, Krider filed a notice of appeal.
 

 II. Jurisdiction
 

 Jurisdiction lies in this court pursuant to N.C. Gen. Stat § 7A-27(b).
 

 III. Standard of Review
 

 The standard of review for alleged violations of constitutional rights is
 
 de novo.
 

 State v. Tate,
 

 187 N.C.App. 593
 
 , 599,
 
 653 S.E.2d 892
 
 , 897 (2007).
 

 Pursuant to N.C. Gen.Stat. § 1-301.3(d), a superior court reviews an heir determination order from a clerk to determine (1) whether the findings of fact are supported by the evidence; (2) whether the conclusions of law are supported by the findings of facts; and (3) whether the order or judgment is consistent with the conclusions of law and applicable law. N.C. Gen.Stat. § 1-301.3(d) (2005). Appellate review is the same as that of the superior court.
 
 In re Williams,
 

 208 N.C.App. 148
 
 , 151,
 
 701 S.E.2d 399
 
 , 401 (2010).
 

 IV. Analysis
 

 A. Substantial Compliance
 

 Appellant argues that Williams's substantial compliance with N.C. Gen.Stat. § 29-19(b)(2) should establish Appellant as a legal heir of Williams's estate. N.C. Gen.Stat. § 29-19(b) states that "for purposes of intestate succession, a child born out of wedlock shall be entitled to take by through and from ... (2) any person who has acknowledged himself during his own lifetime and the child's lifetime to be the father of the child in a written instrument executed or acknowledged before a certifying officer named in G.S. 52-10(b) and filed during his own lifetime and the child's lifetime in the office of the clerk of superior court of the county where either he or the child resides." N.C. Gen.Stat. § 29-19(b)(2) (2013). Thus, N.C. Gen.Stat. § 29-19(b)(2) allows legitimation to occur if the unwed father acknowledges the child while both the father and child are living through the signing, notarization and filing of an Affidavit of Parentage with the office of the clerk of the superior count where either the father or child resides.
 

 Id.
 

 *82
 
 Failure to meet the exact requirements of the statute leaves the child in an illegitimate status for intestate succession purposes.
 
 Hayes v. Dixon,
 

 83 N.C.App. 52
 
 , 54-55,
 
 348 S.E.2d 609
 
 -610 (1986). This
 
 *258
 
 Court recognizes "an illegitimate child's right to inherit from her putative father is established only via strict compliance with [ section 29-19(b)(2) ]" and as such "that a putative father's acknowledgment of paternity before a notary public and execution of an 'Affidavit Of Parentage For Child Born Out Of Wedlock' did not comply with the statutory provisions of [ § 29-19(b)(2) ] when such acknowledgment was never filed."
 
 In re Williams,
 

 208 N.C.App. 148
 
 , 152,
 
 701 S.E.2d 399
 
 , 401-02 (2010) (citing
 
 In re Estate of Morris,
 

 123 N.C.App. 264
 
 , 266-67,
 
 472 S.E.2d 786
 
 , 787 (1996) ).
 

 Appellant fails to refute the principle that strict compliance with section 2919(b)(2) is required, and instead argues substantial compliance should be the law. Appellant's argument for substantial compliance relies exclusively on the dissent in
 
 Estate of Stern v. Stern,
 

 66 N.C.App. 507
 
 , 512-22,
 
 311 S.E.2d 909
 
 , 912-17 (1984). In
 
 Stern,
 
 the dissent determined section 29-19(b)(2) is a remedial statute because one of the purposes in enacting section 29-19(b)(2) was the "mitigat[ion of] hardships created by former law (which permitted illegitimates to inherit only from the mother and from each other)."
 
 Id.
 
 at 516,
 
 311 S.E.2d at 914
 
 . Therefore, like other remedial statutes, section 29-19(b)(2) is required to be "liberally construed as a whole in the light of the evils sought to be eliminated, the remedies intended to be applied, and the objective to be attained."
 

 Id.
 

 (citing
 
 Puckett v. Sellars,
 

 235 N.C. 264
 
 , 266,
 
 69 S.E.2d 497
 
 , 498 (1952) ). As a result, the dissent concluded that constructive compliance should be the law because it would "further the remedial purposes of the statute and attain the objectives of equalization of the inheritance rights of legitimate and illegitimate children and their heirs."
 

 Id.
 

 However, Appellant's reliance on the dissent in
 
 Stern
 
 is misplaced because it has not been accepted as binding law by our courts. As noted above, strict compliance remains the law.
 
 Morris,
 

 123 N.C.App. at 266-67
 
 ,
 
 472 S.E.2d at 787
 
 (1996) ("Although we are aware of cases commenting upon constructive compliance, the doctrine has not been specifically recognized in North Carolina.") (citing
 
 Hayes,
 

 83 N.C.App. at 54
 
 ,
 
 348 S.E.2d at 610
 
 .) In fact, this Court affirmed strict compliance in the majority opinion of
 
 Stern v. Stern,
 

 66 N.C.App. at 510
 
 ,
 
 311 S.E.2d at 911
 
 . Thus, Appellant's request to read substantial compliance into the statute must fail. As in
 
 Morris,
 
 Williams executed an Affidavit of Parentage before a notary public but never filed the affidavit. As such, Appellant still remains in an illegitimate status per section 29-19(b)(2). We are aware
 
 *83
 
 that the result of our decision means that a child potentially suffers an unfair outcome. However, despite Appellant's plight,
 

 when, as here, the statutory language is clear and unambiguous, there is no room for judicial construction and the court must give the statute its plain meaning without superimposing provisions or limitations not contained therein. As this Court has recognized, G.S. 29-19 mandates what at times may create a harsh result. It is not, however, for the courts but rather for the legislature to effect any change.
 

 Morris,
 

 123 N.C.App. at 267
 
 ,
 
 472 S.E.2d at 788
 
 .
 

 B. Constitutional Challenge
 

 Appellant challenges the constitutionality of section 29-19(b)(2) under the Equal Protection Clause of the U.S. Constitution and contends the statute prevents illegitimate children from inheriting from their fathers based solely on their illegitimate status. Classifications based on illegitimacy are subject to intermediate scrutiny. The State must prove the classification is substantially related to permissible state interests; otherwise, the classification violates the Equal Protection Clause.
 
 Lalli v. Lalli,
 

 439 U.S. 259
 
 , 265,
 
 99 S.Ct. 518
 
 ,
 
 58 L.Ed.2d 503
 
 (1978). This means section 29-19(b)(2) must "not broadly discriminate between legitimates and illegitimates without more, but be carefully tuned to alternative considerations."
 
 Mathews v. Lucas,
 

 427 U.S. 495
 
 ,
 
 96 S.Ct. 2755
 
 ,
 
 49 L.Ed.2d 651
 
 (1976).
 

 The State interest in section 29-19(b)(2) is the "just and orderly disposition of property at death."
 
 Outlaw,
 

 41 N.C.App. at 574-75
 
 ,
 
 255 S.E.2d at 191
 
 . This Court and the N.C. Supreme Court have recognized that such a state interest is permissive and
 
 *259
 
 that the classification based on illegitimacy created by section 29-19(b)(2) is substantially related to that permissive state interest.
 
 Id.; see also
 

 Mitchell v. Freuler,
 

 297 N.C. 206
 
 , 216,
 
 254 S.E.2d 762
 
 , 768 (1979). In
 
 Outlaw,
 
 this Court held:
 

 [ Section 29-19 ] insofar as it provide[s] that an illegitimate child may inherit from its father only if paternity has been acknowledged in writing or finally adjudged in the lifetime of the father and otherwise in accord with those applicable statutes, establish[es] a statutory scheme which bears an evident and substantial relation to the permissible and important interest of the State in providing for the just and orderly disposition of property at death ... [t]herefore, we find that the statutory scheme established
 
 *84
 
 by G.S. 29-19 ... does not discriminate against illegitimate children in such manner as to violate the Equal Protection Clause of the Fourteenth Amendment to the Constitution of the United States.
 

 Outlaw,
 

 41 N.C.App. at 574-75
 
 ,
 
 255 S.E.2d at 191
 
 . The holding of
 
 Outlaw
 
 mirrors the U.S. Supreme Court decision in
 
 Lalli,
 
 which held a New York statute that required a formal legitimization method
 
 [1]
 
 via judicial decree
 
 [2]
 
 did not violate the Equal Protection Clause because such a formal legitimization method is substantially related to the permissive state interest in just and orderly disposition of property at death.
 
 Lalli,
 

 439 U.S. at 275
 
 ,
 
 99 S.Ct. 518
 
 . The Court reasoned that statutes imposing formal legitimization methods for establishing legitimacy of children were substantially related to the permissive state interest of just and orderly disposition of property at death because without formal requirements, estates could never be officially declared final per court decree and thus proper ownership of estate property would remain unknown.
 

 Id.
 

 at 270
 
 ,
 
 99 S.Ct. 518
 
 ("[H]ow [can the courts] achieve finality of decree in any estate when there always exists the possibility however remote of a secret illegitimate lurking in the buried past of a parent or an ancestor of a class of beneficiaries? Finality in decree is essential in the .... courts since title to real property passes under such decree.").
 

 Appellant does not dispute any of the above decisions, but instead relies on
 
 Cty. Of Lenoir ex rel. Cogdell v. Johnson,
 

 46 N.C.App. 182
 
 ,
 
 264 S.E.2d 816
 
 (1980) as evidence that section 29-19(b)(2) is unconstitutional. In
 
 Lenoir,
 
 our Supreme Court determined the constitutionality of a child support statute that limited "the time in which an action to establish the paternity of an illegitimate must be commenced" to three years.
 
 Id.
 
 at 183-84,
 
 264 S.E.2d at 818
 
 . A child who had not commenced the action within the three-year period forfeited all rights to child support from the putative parent.
 
 Id.
 
 at 184,
 
 264 S.E.2d at 818
 
 . This Court, applying the intermediate scrutiny test, declared the statute of
 
 *85
 
 limitations unconstitutional because the statute of limitations was not substantially related to the declared state interest in "preventing the litigation of stale or fraudulent claims."
 
 Id.
 
 at 188,
 
 264 S.E.2d at 821
 
 . This Court based its determination on two things. First, since a minor is entitled to child support until age 18, the three-year statute of limitations could not be substantially related to preventing stale claims, but rather it treaded upon another state interest, preventing illegitimate children from becoming public charges. Second, there is no substantial relationship between preventing fraudulent child support claims and the three-year period because "[t]he mere passage of a certain amount of time before the custodial parent sues for child support has no logical connection with whether the noncustodial parent is or is not the actual parent."
 
 Id.
 
 at 188-89,
 
 264 S.E.2d at 821
 
 .
 

 Appellant's reliance on
 
 Lenoir
 
 is misplaced because
 
 Lenoir
 
 concerned a statute whose
 
 *260
 
 statute of limitations affected an illegitimate child's ability to acquire child support from a putative parent. As the majority pointed out in
 
 Lalli,
 
 cases involving statutes that create classifications based on illegitimate status and prevent an illegitimate child from acquiring child support (i.e.,
 
 Lenoir
 
 ) are readily distinguishable from cases involving classifications affecting an illegitimate child's ability to inherit via intestate succession.
 
 See
 

 Lalli,
 

 439 U.S. at
 
 268 n. 6,
 
 99 S.Ct. 518
 
 . The latter type of case involves a substantial state interest in just and orderly disposition of property at death, while the former type of case does not.
 
 See
 

 Weber v. Aetna Casualty & Surety Co.,
 

 406 U.S. 164
 
 , 170,
 
 92 S.Ct. 1400
 
 ,
 
 31 L.Ed.2d 768
 
 (1972). Therefore,
 
 Lenoir
 
 is not applicable.
 

 Pursuant to the case law of the U.S. Supreme Court, the N.C. Supreme Court and this Court, Appellant's request to declare N.C. Gen.Stat. § 29-19(b)(2) unconstitutional must be denied.
 

 V. Conclusion
 

 For the foregoing reasons, we affirm the final judgment of the trial court.
 

 AFFIRMED.
 

 Chief Judge McGEE and Judge STEPHENS concur.
 

 [1]
 

 The phrase "formal legitimization method" means methods of legitimizing illegitimate children so they can inherit from their unwed parents via intestate succession.
 

 [2]
 

 It is important to note that the holding of
 
 Lalli
 
 extends to most formal methods of legitimization.
 
 See
 

 Lalli,
 

 439 U.S. at 272, n. 8
 
 ,
 
 99 S.Ct. 518
 
 ("In affirming the judgment below, we do not, of course, restrict a State's freedom to require proof of paternity by means other than a judicial decree. Thus, a State may prescribe any formal method of proof [including any] regularized procedure that would assure the authenticity of the acknowledgement.").